628 A.2d 1165

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Raymond STINSON, a/k/a Ray Supreme, Appellant.**

Superior Court of Pennsylvania.

Argued April 1, 1993.

Filed July 26, 1993.

Michael P. Gottlieb, Norristown, for appellant.

Maria Dutkowski, Rosemont, Asst. Dist. Atty., for Com., for appellee.

Before TAMILIA, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following appellant's convictions on charges of voluntary manslaughter and possessing an instrument of crime. We affirm.

On August 21, 1992, appellant shot and killed Clyde Foster Whyte on a street in Norristown, Pennsylvania. N.T. 3/16/92–3/18/92 at 33, 95, 97, 109–110, 217–218, 228. Both appellant and the victim of the shooting were black. On March 18, 1992, a jury found appellant guilty of one count of voluntary manslaughter and one count of possessing an instrument of crime. Appellant timely filed post-verdict motions which were denied by the lower court by its order dated April 24, 1992. On June 17, 1992, appellant was sentenced to 5–10 years on the voluntary manslaughter charge and 1–2 years on the charge of possessing an instrument of crime. This appeal ensued.

Herein, appellant raises three arguments to assert that the lower court committed errors of law. First, appellant contends that the court below erred in refusing to allow certain proposed voir dire questions by appellant to be asked to prospective jurors. Second, appellant maintains that the lower court erred in permitting the use of appellant's prior conviction for unauthorized use of a motor vehicle to be used to impeach his credibility. Third, appellant argues that the lower court erred in allowing the Commonwealth to introduce the preliminary hearing testimony of a witness into evidence.

■ Addressing the first argument raised by appellant, we find that the court below did not abuse its discretion nor commit an error of law in refusing to allow appellant's proposed voir dire questions 53–59 to be asked to prospective jurors. During voir dire examination, appellant requested that the following questions be read to the prospective jurors:

53. Do any of you have any personal or professional relationships with blacks?

54. Do any of you think that black people have different values and standards than white people do?

55. Do any of you think black people have a harder time getting along in society?

56. Do any of you feel, there are any differences between black people and white people?

57. Do any of you have any prejudice against black people?

58. Have you had any dealings or experiences with black people that might make it difficult for you to sit in impartial judgment on this case?

59. Will the fact that the defendant is black affect in any way your judgment of this case?

Appellant's Brief at 6. The lower court did not pose the aforesaid questions verbatim to the prospective jurors. Instead, the court presented the following questions to the prospective jurors regarding appellant's race:

THE COURT: Have any of you had any dealings with Black people that might make it difficult for you to sit in judgment in this particular case?

(No reply)

THE COURT: Do any of you have or harbor any prejudices against Black people?

(No reply)

THE COURT: Would the fact that the defendant is Black in any way alter, cause you to alter your judgment in this case? Would that affect your judgment in this case if you are chosen, the fact that the defendant is Black?

PROSPECTIVE JUROR: No. 5.

THE COURT: Anyone else?

(No reply)

Voir Dire N.T. 3/16/92 at 22–23.

"The purpose of voir dire is to secure a competent, fair, impartial and unprejudiced jury. The scope of voir dire rests in the sound discretion of the trial court and will not be reversed on appeal in the absence of palpable error." *Commonwealth v. Proctor*, 526 Pa. 246, 257, 585 A.2d 454, 460

(1991) (citation omitted). *See Commonwealth v. Newman,* 382 Pa.Super. 220, 236–38, 555 A.2d 151, 159 (1989) (scope of voir dire rests within sound discretion of trial court and will not be reversed on appeal absent a gross abuse of discretion).

Appellant maintains that his proposed voir dire questions 53–59 were designed specifically to inquire into racial prejudice. Appellant further argues, "[s]ince the Trial Court refused to ask these questions of the venire panel, the defendant was inescapably prejudiced thereby and a new trial should be awarded." Appellant's Brief at 7.

In his brief, appellant completely ignores the fact that the lower court did, indeed, present questions to prospective jurors which directly probed into whether any of them harbored any racial prejudices or biases that would affect the juror's ability to render a fair verdict. The three voir dire questions asked by the lower court to the prospective jurors captured the essence at which appellant's proposed questions 53–59 were directed. The lower court's questions were more than adequate to elicit any possible bias or prejudice against appellant on the account of his race that might affect a juror's ability to render a fair verdict.

In *Commonwealth v. Futch,* 469 Pa. 422, 426–28, 366 A.2d 246, 248 (1976), our supreme court determined that the following two voir dire questions, which are nearly identical to the questions posed by the lower court in the instant case, were more than adequate to elicit any possible racial bias:

1. Have you had any experience with black persons that might impair your ability to be fair and impartial?

2. Will the fact that the defendant is a black person affect in any way your judgment in this case?

In light of that finding by our supreme court, we are easily convinced that the three questions asked by the court below to the prospective jurors completely dispels of all the concerns raised in appellant's proposed questions 53–59.

■ After examining appellant's second contention that the lower court erred, we find that the court below properly allowed appellant's prior conviction of unauthorized use of a

motor vehicle to be used to impeach his credibility. During direct examination of appellant at trial, appellant's attorney asked him the following questions:

> DEFENSE ATTORNEY: Mr. Stinson, you were previously convicted of a charge of unauthorized use of a motor vehicle, is that correct?
>
> MR. STINSON: Yes.
>
> DEFENSE ATTORNEY: The fact that you were convicted of unauthorized use of a motor vehicle, does that affect your testimony here today?
>
> ASSISTANT D.A.: Objection. You[r] Honor, that's for the jury to decide.
>
> THE COURT: Sustained.

N.T. 3/16/92–3/18/92 at 220–221 (counsel's titles and appellant's name added for clarification purposes).[1] In its instructions to the jury, the lower court addressed appellant's testimony regarding his prior conviction for unauthorized use of a motor vehicle:

> There was evidence, members of the jury, which tended to prove that the defendant had a prior criminal record. I am speaking of the fact that he admitted that he had been convicted of unauthorized use of an automobile. In the Commonwealth of Pennsylvania this is what we call a crimen falsi, a crime of falsehood. This evidence is not evidence of the defendant's guilt. You must not infer guilt from the evidence of prior convictions or bad reputation for truth. This evidence may be considered by you for one purpose only, that is, to help you judge the credibility and weight of the testimony given by the defendant as a witness in this trial.

N.T. 3/16/92–3/18/92 at 263.

In *Commonwealth v. Johnson*, 340 Pa.Super. 26, 489 A.2d 821 (1985), our court determined that the unauthorized use of

---

1. We note that at the suppression hearing, appellant sought to prevent the admission of his prior conviction at trial. However, the lower court ruled that the Commonwealth could use the conviction for impeachment purposes.

a motor vehicle is a crime of falsehood (*crimen falsi* ). Thus, we held that the trial court did not abuse its discretion in admitting evidence of defendant's prior convictions for that crime for impeachment purposes. *Id.,* 340 Pa.Super. at 30–32, 489 A.2d at 824. In arriving at our decision in *Johnson,* we also noted that the trial court gave a strong cautionary instruction to the jury concerning the purpose for admitting evidence of those prior convictions.

Guided by our court's decision in *Johnson,* we conclude that the lower court did not commit an error in allowing appellant's prior conviction for unauthorized use of a motor vehicle to be used to impeach his credibility. In addition, we find that the lower court's instructions to the jury adequately explained the purpose for admitting evidence of that past conviction.

Addressing appellant's third and final argument, we hold that while the lower court committed error in admitting into evidence the preliminary hearing testimony of Everton Smith, an eyewitness to the shooting and brother of the victim, the error was harmless. Appellant asserts that the preliminary testimony should not have been admitted on two bases. First, appellant maintains that Everton Smith was not "unavailable" to testify at trial. Second, appellant contends that his defense counsel did not have a full opportunity to cross-examine Everton Smith at the preliminary hearing.

Under Pennsylvania law, a witness, who has previously testified but "cannot be found" to testify at trial, will be deemed "unavailable" if the Commonwealth has made a good faith effort to locate that witness and compel his attendance at trial. *DelVitto v. Schiavo,* 370 Pa. 299, 87 A.2d 913 (1952); *Commonwealth v. Jackson,* 463 Pa. 301, 344 A.2d 842 (1975).

In *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975), our supreme court found that the Commonwealth made numerous attempts to serve a subpoena on a witness who had previously testified. Those attempts included going to the address that the witness had given the police, contacting the witness' mother, checking the Post Office to get a forwarding address on the witness, issuing a bench warrant, and search-

ing and maintaining an all night vigil at the home of the witness' mother. *Id.*, 460 Pa. at 33–36, 331 A.2d at 214–215. Our supreme court concluded that, under these circumstances, the Commonwealth had made a good faith effort to compel the witness' attendance. Consequently, the court determined that the witness was "unavailable" to testify at trial. *Id.*, 460 Pa. at 35–36, 331 A.2d at 215.

■ Here, Everton Smith testified at the preliminary hearing but could not be found by the Commonwealth to testify at trial. At the suppression hearing, George Metz, a Montgomery County detective, testified as to his attempts to serve Mr. Smith with a subpoena to appear at trial. Those attempts included the following: going to two addresses that Mr. Smith provided to the police and which were located in Patterson, New Jersey, contacting the F.B.I. office in Lansdale, Pennsylvania, to determine Mr. Smith's residence in Jamaica, contacting the Immigration Department in Philadelphia to get Mr. Smith's visa extended, and sending certified and registered mail to an address in Jamaica to contact Mr. Smith. Suppression N.T. 3/16/92 at 25–37. Under these circumstances, we conclude that the Commonwealth has made a good faith effort to secure Everton Smith's attendance. Hence, we deem Mr. Smith "unavailable" to testify at trial.

Appellant further argues that Everton Smith's preliminary hearing testimony should have been inadmissible at trial because he was precluded from impeaching the credibility of Everton Smith at the preliminary hearing. Thus, appellant argues that he was not given a full opportunity to cross-examine Mr. Smith in that earlier proceeding.

"[O]ur common law permits the admission of an unavailable witness' prior recorded testimony from a preliminary hearing, provided the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding." *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986); *See Commonwealth v. McGrogan*, 367 Pa.Super. 394, 532 A.2d 1203 (1987), *affirmed*, 523 Pa. 614, 568 A.2d 924

(1990); *Commonwealth v. Jones,* 344 Pa.Super. 420, 496 A.2d 1177 (1985).

At the preliminary hearing, appellant's counsel cross-examined Everton Smith extensively about what he heard and what he saw when the victim was shot. Preliminary N.T. 9/10/91 at 44–61. Mr. Smith testified that he heard an explosion and saw appellant pointing a gun at the victim. Preliminary N.T. 9/10/91 at 30–31, 33–34, 44–45. Moreover, Mr. Smith stated that after the shooting, he ran to where the victim was lying and asked the victim who shot him. To that question, the victim replied, "Ray". Preliminary N.T. 9/10/91 at 33, 54. However, when appellant's counsel asked Everton Smith whether he had any prior criminal convictions, the Commonwealth objected. The district magistrate sustained that objection, refusing to allow counsel to attack Smith's credibility. Preliminary N.T. 9/10/91 at 61.

Generally, credibility is not an issue at a preliminary hearing. *Commonwealth v. Fox,* 422 Pa.Super. 224, 619 A.2d 327 (1993).[2] However, in *Commonwealth v. Bazemore,* our

2. In *Fox,* the defendant contended that the district magistrate at the preliminary hearing erred in sustaining the objections of the Commonwealth to defense counsel's questions pertaining to the credibility of John Jerome Masi, a witness for the Commonwealth. Because he was precluded from asking those questions, the defendant asserted that he was denied the full opportunity of cross-examination at the preliminary hearing. In assessing the issue of whether full opportunity of cross-examination at the preliminary hearing stage includes the right to impeach the credibility of a witness, our court focused on the intent and purpose behind preliminary hearings, —i.e., Commonwealth merely bears burden of establishing prima facie case against defendant—and concluded that the defendant had no right to impeach the credibility of John Jerome Masi. *Fox,* 422 Pa.Super. at 233–36, 619 A.2d at 332–333.

The facts presented in *Fox* are distinguishable from those in the instant case. In *Fox,* the witness at the preliminary hearing, John Jerome Masi, also testified at trial and was subjected to credibility questions on cross-examination. *Id.* at 233–36, 619 A.2d at 332–333. Here, the witness at the preliminary hearing, Everton Smith, was unavailable to testify at trial. In *Fox,* in reaching our conclusion that the defendant had no right to impeach the credibility of the witness at the preliminary hearing, our court was guided by decisions involving fact patterns different from the present case. In those decisions, the witness who testified at the preliminary hearing did not become unavailable to testify at trial. *Id.* at 233–36, 619 A.2d at 332–333.

supreme court was presented with the following issue: "whether the transcript of prior testimony from a preliminary hearing of an unavailable Commonwealth witness should be admissible at trial where the Commonwealth failed to disclose to the defense vital impeachment evidence regarding this witness *prior* to the preliminary hearing." 531 Pa. 582, 583–84, 614 A.2d 684, 685 (1992) (emphasis added). In addressing that issue, the supreme court found that under the particular facts of the case, the transcript of prior testimony should be inadmissible at trial:

> On August 13, 1987, a criminal complaint was filed against appellant charging him with criminal attempt to commit burglary. A preliminary hearing was held in this matter on November 2, 1988. Appellant was represented at the preliminary hearing by counsel. Melvin Hauser testified on behalf of the Commonwealth during the preliminary hearing. Indeed, Mr. Hauser was the sole Commonwealth witness presented on that date. While counsel for appellant cross-examined the witness during the preliminary hearing, *she was unaware or had not been informed that Mr. Hauser had made a prior inconsistent statement to the police; that he had a criminal record; and that the Office of the District Attorney was, at that time, contemplating the filing of criminal charges against Mr. Hauser for homicide and conspiracy in connection with the same incident giving rise to the complaint against Bazemore.*
>
> We are of the opinion that our court in *Fox* determined that credibility is not an issue at the preliminary hearing stage when the defendant is afforded the opportunity to attack the witness' credibility at trial. In essence, the question of whether the magistrate in *Fox* committed an error in precluding the defendant from attacking the credibility of John Jerome Masi at the preliminary hearing was moot. Since the defendant in *Fox* was granted the trial right to impeach the credibility of John Jerome Masi, our court found that the defendant's assertion that he also had a preliminary hearing right to impeach that same witness was meritless. Here, because Everton Smith was unavailable to testify at trial, appellant was never given the opportunity to attack the credibility of Mr. Smith. In light of that procedural distinction, we find that the our decision in *Fox* is not dispositive of the issue presented in the instant case.

> At a subsequent pre-trial hearing, inquiry was made of Mr. Hauser regarding whether, if called at trial, he would testify. He unequivocally invoked his Fifth Amendment right against self-incrimination.... The Commonwealth indicated that it would seek to admit the testimony of Mr. Hauser given at the preliminary hearing.

*Id.* 531 Pa. at 584, 614 A.2d at 685 (emphasis added) (footnote omitted).

By virtue of the fact that the Commonwealth failed to provide the aforesaid information to the defense prior to cross-examination of the witness at the preliminary hearing, our supreme court determined that the defense was denied *full and fair opportunity* to cross-examine the witness. Hence, the court held that the transcript of the preliminary hearing testimony of the unavailable witness was not admissible at trial. *Id.* at 589–91, 614 A.2d at 688. It reasoned that under the circumstances of the case, admission of the prior testimony would result in a miscarriage of justice on the basis that the defendant was not permitted to test the testimony's reliability. *Id.* at 586–89, 589–91, 614 A.2d at 686–87, 688. In its analysis, our supreme court stated as follows:

> [T]he prosecutor, whose duty of course is to seek justice, not merely convict, ... has an affirmative and continuing duty to disclose exculpatory information to the defendant and to correct false testimony of a witness. Moreover, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure [on the part of the Commonwealth] of evidence affecting credibility violates due process.

*Id.* at 591, 614 A.2d at 688 (citation omitted).

█ Here, appellant asserts that he was unable to discover whether Everton Smith had any prior criminal record or made any prior inconsistent statements because he was precluded from inquiring into Everton Smith's credibility at the preliminary hearing. Furthermore, following the preliminary hearing, appellant's counsel filed a motion for discovery, specifically requesting the aforesaid information. In its order dated

February 11, 1992, the lower court scheduled argument on that discovery motion for February 25, 1992. However, the record is devoid of any information on whether that argument ever occurred. Appellant's counsel maintains that the Commonwealth has not, to date, provided him with information on whether Everton Smith had a prior criminal record or made prior inconsistent statements.[3] Appellant's Brief at 13.

The suppression hearing was held the same day as the first day of trial. At the suppression hearing, appellant's counsel was informed for the *first time* that Everton Smith would be unavailable to testify at trial, and that the Commonwealth intended to present the transcript of Mr. Smith's preliminary hearing testimony at trial. Suppression N.T. 3/16/92 at 40, 47–48.

■ In light of our supreme court's holding in *Bazemore, supra,* we find that appellant was not afforded a full and fair opportunity to cross-examine Everton Smith at the preliminary hearing. Our decision, as our supreme court's in *Bazemore,* "[does not] impose upon the Commonwealth a duty to disclose that which it is not obligated by law to disclose." 531 Pa. at 590, 614 A.2d at 688. "Furthermore, we are cognizant of the fact that the Commonwealth will not necessarily know that a particular witness may, indeed, subsequently become unavailable." *Id.* at 590, 614 A.2d at 688. Nevertheless, our decision is predicated on the determination that, as between the competing interests of admitting the former testimony of an unavailable witness and the defendant's constitutional right to confront a witness, we find the latter paramount.

■■ Although we are of the opinion that the lower court committed an error of law in admitting the preliminary testimony of Everton Smith at trial, we conclude that this error was harmless on the ground that admitting Smith's testimony was merely cumulative. Error may be considered harmless where "the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially simi-

3. It appears that defense counsel believes that Everton Smith has a prior criminal record. Suppression N.T. 3/16/92 at 58.

lar to the erroneously admitted evidence." *Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349, 1352 (1992), citing *Commonwealth v. Williams,* 524 Pa. 404, 573 A.2d 536, 538–539 (1990). *See Commonwealth v. Fell,* 453 Pa. 531, 309 A.2d 417, 420 (1973) (error harmless where improperly admitted evidence cumulative and did not prejudice the defendant's right to a fair trial).

In *Bazemore,* the Commonwealth relied chiefly on the unavailable witness' preliminary hearing testimony in its prosecution of the defendant. *Id.* at 583–85, 614 A.2d at 685. Here, however, at trial, the Commonwealth presented the testimony of two key witnesses, Sharon Mayo and Sergeant Russell Bono of the Norristown Police Department, in conjunction with the transcript of the preliminary hearing testimony of Everton Smith. At trial, Sharon Mayo, an eyewitness to the shooting, testified in detail about what transpired. N.T. 3/16/92–3/18/92 at 30–62. Mayo stated that the victim, Everton Smith and she were walking together on the streets of Norristown when she saw appellant approach them and shoot the victim about four or five times with a black revolver. N.T. 3/16/92–3/18/92 at 31–33. Also, at trial, Sergeant Bono testified that when he saw the victim lying on the ground he asked the victim what had happened. To that question, the victim stated that he was shot by "Ray". N.T. 3/16/92–3/18/92 at 97.

Upon reviewing the trial testimony of both Sharon Mayo and Sergeant Bono in relationship to the preliminary hearing testimony of Everton Smith, we find that Mayo and Bono's recounting of the events was much clearer and more compelling than Smith's recollection. We conclude that the error did not contribute to the verdict. *See Commonwealth v. Story,* 476 Pa. 391, 408–10, 383 A.2d 155, 164 (1978) (error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict). Consequently, we are convinced, beyond a reasonable doubt, that the admissibility of Everton Smith's preliminary hearing testimony transcript at trial was harmless error. *See id.* at 406, 383 A.2d at 162–163 ("beyond a reasonable doubt" standard ap-

plied in determining the harmlessness of any criminal trial error).

Having examined all of appellant's contentions, we find no basis warranting a new trial. Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.