661 A.2d 390

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Daniel CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 23, 1995.

Filed June 6, 1995.

Reargument Denied Aug. 4, 1995.

Patrick J. Egan, Doylestown, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before POPOVICH, HUDOCK and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County following appellant's convictions for first degree murder,[1] possession of an instrument crime,[2] possession of a prohibited offensive weapon[3] and criminal conspiracy.[4]

Appellant now raises the following questions for review:

1. Whether the trial court erred by admitting as substantive evidence the prior inconsistent statement contained in the preliminary hearing testimony of Shaw [sic] Bayne ("Ali") where, inter alia, Ali did not testify and was therefore not subject to cross-examination at appellant's murder trial in violation of *Brady–Lively*.[5]

2. Whether the trial court erred by admitting as substantive evidence the prior inconsistent statement contained in the preliminary hearing testimony of Shaw [sic] Bayne ("Ali") where, inter alia, Ali's statement was not trustworthy or reliable in violation of *Brady–Lively* and the Confrontation Clause of the Sixth Amendment to the United States Constitution.

3. Whether the defense counsel was ineffective for failing to call any witnesses where, inter alia, said witnesses were known to the defense attorney, JOSHUA BRISKIN, ESQUIRE, and whose testimonies would have cast reasonable doubt on the Commonwealth's case.

After careful review, we affirm.

On July 3, 1992, at approximately 1:30 a.m., appellant and one Jamal Jones arrived at the home of Daniel Witherspoon at 711 Mercy Street in Philadelphia. Appellant requested to speak with Shawn "Ali" Bain, who was Witherspoon's step-son and resided with him. Appellant asked Bain if he could

---

1. 18 Pa.C.S.A. § 2502(a).

2. 18 Pa.C.S.A. § 907(b).

3. 18 Pa.C.S.A. § 908.

4. 18 Pa.C.S.A. § 903(a)(1).

5. *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986); *Commonwealth· v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992).

borrow his twelve gauge sawed-off shotgun. Bain agreed and retrieved the shotgun, loaded with three shells, from his bedroom. Appellant and Jones left with the shotgun and met one Wayne "Hawk" Witherspoon. The three men proceeded to a playground, approximately one and one-half blocks from Witherspoon's house. Once inside the playground, appellant approached the victim, Darryl Chinn, who was sitting on a park bench facing the basketball court. Appellant fired a single, fatal shot into Chinn's groin and pelvis from approximately two yards away.

On September 11, 1992, Daniel Witherspoon, while in police custody for an unrelated domestic abuse offense, requested to speak to the police regarding Chinn's homicide. Witherspoon described to the police the events which transpired on the evening of July 3, 1992. Witherspoon stated that Bain gave appellant a twelve gauge shotgun, and that he observed appellant, Jones and "Hawk" enter the playground where the victim was sitting. According to Witherspoon, appellant fired one shot at the victim and then retreated north on Seventh Street. Witherspoon reviewed the verbatim transcription of his statement and signed each page. On October 29, 1992, Witherspoon gave a second statement to police, reaffirming the contents of the September 11, 1992, statement.

The police brought Bain [6] in for questioning on September 11, 1992, in order to corroborate Witherspoon's story. Bain gave a statement, implicating appellant, to Detective Michael Cahill. His statement established that he gave appellant his twelve gauge shotgun, loaded with three shells, on the evening of July 3, 1992. Bain stated that "Hawk" returned the gun to him approximately five to ten minutes after borrowing it, with one shell missing. Later that night, Witherspoon warned Bain, to get the gun out of the house because appellant had just killed somebody with it. Bain agreed and delivered the gun to one George Mitchell. The police retrieved the shotgun from Mitchell's house the following day. Bain reviewed the verbatim transcription of his statement and signed each page. On October 5, 1992, Bain reaffirmed the statement of Septem-

6. Bain was accompanied by his mother because he was a juvenile.

ber 11, 1992, in a second version that was signed and reviewed by Bain.

On October 31, 1992, appellant was arrested and charged with the murder of Darryl Chinn. A preliminary hearing was scheduled for December 6, 1992, at which both Witherspoon and Bain recanted their prior statements to police. Witherspoon testified, during questioning by the prosecution, that he was high on crack cocaine when he gave police the September 11, 1992, statement and could not remember the substance of that statement. Witherspoon denied witnessing appellant shoot Darryl Chinn. The prosecution then introduced Witherspoon's September 11, 1992, statement as both substantive and impeachment evidence.

Bain also recanted his September 11, 1992, statement. Bain contended that he gave his unloaded shotgun to Jones, not appellant, on the night of July 3, 1992. Bain testified that he lied in his September 11, 1992, statement because he was scared. Bain also stated that during his October 5, 1992, interview with police, Detective Morton did not read his September 11, 1992, statement to him. The prosecution then introduced Bain's prior inconsistent statement as both substantive and impeachment evidence. The trial court held appellant for trial based on Witherspoon's and Bain's statements as well as other evidence.

Appellant proceeded to a bench trial on January 31, 1994. Witherspoon appeared at trial and again recanted his September 11, 1992, statement. He denied witnessing appellant shoot the victim. The prosecution then introduced Witherspoon's prior inconsistent statement as substantive and impeachment evidence.

A bench warrant was issued to secure Bain's appearance at appellant's trial but the police were unable to locate him in order to compel him to testify on behalf of the Commonwealth. Apparently, Bain had fled. The prosecution attempted to introduce Bain's prior inconsistent statement pursuant to 42 Pa.C.S.A. § 5917 on the ground that Bain was "unavailable." [7]

7. 42 Pa.C.S.A. § 5917 provides:

Various Philadelphia police officers testified on behalf of the Commonwealth regarding their unsuccessful attempts to locate Bain and secure his attendance at trial. The trial judge then permitted the prosecution to introduce Bain's preliminary hearing testimony which included his prior inconsistent statement made September 11, 1992.

The Commonwealth also introduced substantial evidence in addition to Witherspoon's and Bain's statements, connecting appellant to the crime. The twelve-gauge shotgun that appellant used to commit the murder and the shotgun pellets that were removed from the victim's body were introduced into evidence. The Commonwealth established that the shotgun was in working condition and that Chinn was killed by a single blast from a twelve-gauge shotgun. A ballistics report demonstrated that the shotgun fired the same type of shells that were fired at the victim.

Also, one Dr. Lieberman, the Commonwealth's forensic pathologist, stated that the victim was killed by a single shotgun blast which was fired from a distance of about two or three feet. Philadelphia police officer John Ross testified that he found the victim lying next to the bench on which Witherspoon observed him immediately before the shooting. Properly introduced evidence also established that Witherspoon could have observed the playground and the bench where the shooting occurred. Appellant offered no evidence after the Commonwealth rested.

The court found appellant guilty of first degree murder, various firearms offenses and criminal conspiracy. Prior to sentencing, appellant filed an oral motion for extraordinary

Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. For the purpose of contradicting a witness the testimony given by him in another or in a former proceeding may be orally proved.

relief pursuant to Pa.R.Crim.P. 1405(B), claiming that the trial court erred by admitting Bain's out-of-court statement. After a penalty phase hearing, on March 10, 1994, appellant was sentenced to life imprisonment on the murder charge. Sentence was suspended on the remaining charges. The trial court denied appellant's motion for extraordinary relief and this timely appeal followed.

Appellant now contends that the trial court erred in admitting Shawn Bain's prior inconsistent statement to police because the admission of his evidence did not qualify as a prior inconsistent statement pursuant to *Brady–Lively* and violated appellant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We agree that the trial court erred, but find the error was harmless and affirm the judgment of sentence.

■ The trial court determines whether evidence is relevant and admissible and the trial court's ruling on admissibility will not be disturbed absent an abuse of discretion. *Commonwealth v. Owens*, 437 Pa.Super. 64, 649 A.2d 129 (1994).

■ Our supreme court established the rule for admissibility of a non-party witness' prior inconsistent statement in *Commonwealth v. Brady, supra* and *Commonwealth v. Lively, supra.* In *Brady*, the court held that, "otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein." *Brady*, 510 Pa. 130, 507 A.2d at 70. *Lively* involved a reexamination of the rule announced in *Brady* and resulted in our supreme court reaffirming the general principle established in *Brady*. *Lively*, 530 Pa. 468–469, 610 A.2d at 9–10. The court, in refining the *Brady* rule, held:

In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement has been reduced to a

writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.

*Id.* at 470, 610 A.2d at 10 (citation omitted).

This case presents an unusual situation for admission of a prior inconsistent statement in that the statement was contained in the transcript of Bain's preliminary hearing testimony. The Commonwealth introduced Bain's preliminary hearing testimony to provide a foundation for offering Bain's prior inconsistent statement implicating appellant. Appellant contends that Bain's September 11, 1992, statement was inadmissible under *Brady* and *Lively* because Bain did not testify at trial and was not subject to cross-examination.

Our *en banc* decision in *Commonwealth v. Bujanowski,* 418 Pa.Super. 163, 613 A.2d 1227 (1992), *allocatur denied,* 533 Pa. 642, 622 A.2d 1374 (1993), addressed a similar situation. In *Bujanowski,* Ronald Bujanowski, Jr. gave the police a statement that implicated Marvin Gorelick, himself, and his father, Ronald Bujanowski, Sr., in a series of robberies. *Id.* 418 Pa.Super. 165, 613 A.2d at 1228. Bujanowski, Jr. recanted his prior statement to police at the preliminary hearing and stated that he knew nothing about the burglaries. *Id.* The Commonwealth then introduced Bujanowski's prior inconsistent statement as substantive evidence of guilt of Bujanowski, Sr. and Gorelick. *Id.*

At trial, Bujanowski, Jr. was unavailable to testify at which point the Commonwealth attempted to introduce Bujanowski, Jr.'s preliminary hearing testimony, containing his prior inconsistent statement implicating Bujanowski, Sr. and Gorelick. *Id.* The trial court barred the use of the statement as substantive evidence. *Id.* at 167, 613 A.2d at 1229.

On review, we affirmed the trial court's ruling, stating, "[t]he prior inconsistent statement of Ronald Bujanowski, Jr. in the instant case does not qualify as admissible substantive evidence under *Commonwealth v. Brady* ... because the declarant will not be present in the court and subject to cross-examination." *Id.* at 173, 613 A.2d at 1232. Also, we held that the admission of the prior inconsistent statement violated

the defendants' rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Id.* at 175–178, 613 A.2d at 1233–1235.

■ Here, the lower court erroneously admitted the preliminary hearing testimony of Bain in light of the identical situation that existed in *Bujanowski.* The trial court erred in admitting the evidence under both the *Brady/Lively* standard and pursuant to the Confrontation Clause of the United States Constitution. Bain was unavailable at trial and the Commonwealth attempted to introduce his prior inconsistent statement by laying a foundation with his preliminary hearing testimony. Because the trial court erred in admitting this evidence, we must determine if the error was harmless.

■ The Commonwealth has the burden of establishing that an error is harmless beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). "[A]n error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict." *Id.,* 476 Pa. 409, 383 A.2d at 164. An error is harmless where:

... (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992) (citations omitted).

■ Here, Bain's erroneously admitted testimony was substantially similar to Witherspoon's properly admitted testimony. Both Witherspoon and Bain gave statements to the police averring that appellant came to their house and asked for Bain's shotgun. In fact, Witherspoon's properly admitted statement contained information that was much more damaging to appellant. Witherspoon actually observed the shooting, whereas Bain stated that he only heard about the shooting after it occurred.

There was substantial evidence introduced by the Commonwealth in addition to Bain's erroneously admitted statement. The Commonwealth introduced the murder weapon as well as the shotgun pellets that were recovered from the victim's body. It was established that the victim was killed by a single blast from a twelve-gauge shotgun and that the shotgun was in a working condition. The ballistics report indicated that the shotgun fired the same type of shells that were fired at the victim.

Dr. Lieberman, the Commonwealth's forensic pathologist, stated that the victim was killed by a single shotgun blast which was fired from a distance of about two or three feet away. This evidence lends support to Witherspoon's statement to police that appellant fired one shot from a close distance as the victim sat on a bench in the playground. The Commonwealth produced further evidence corroborating Witherspoon's statement to police via the testimony of Officer John Ross who stated that he found the victim laying next to the bench on which Witherspoon observed him. Evidence also established that Witherspoon could have observed the playground where the shooting occurred. Thus, even without Bain's similar statement, the Commonwealth produced a substantial amount of evidence corroborating Witherspoon's properly admitted statement to police.

Further examination of *Bujanowski*, reinforces our finding that the admission of Bain's testimony was harmless. In *Bujanowski*, the unavailable witness' testimony was the *only* means by which the Commonwealth could prove its case against the defendant. *Id.* 418 Pa.Super. 166–167, 613 A.2d at 1228–29 (emphasis added). In fact the Commonwealth stated that its case would not survive a demurrer without the evidence. *Id.* at 167, 613 A.2d at 1229. Here, Bain's statement to the police was not the only evidence that would enable the Commonwealth to connect appellant with the crime. As previously outlined, the Commonwealth had a substantial amount of additional evidence in addition to Bain's statement. Witherspoon's properly admitted testimony provided a similar version of the crime and, in the absence of Bain's statement, it is

clear that the Commonwealth could still prove its case. In light of the foregoing, the error in admitting Bain's testimony was harmless. *See, Commonwealth v. Stinson,* 427 Pa.Super. 289, 628 A.2d 1165 (1993), *allocatur denied,* 537 Pa. 608, 641 A.2d 309 (1994) (holding that error was harmless where erroneously admitted evidence was substantially similar to properly introduced eyewitness testimony).

Appellant's final allegation of error is that defense counsel was ineffective for failing to call any witnesses where, inter alia, said witnesses were known to trial counsel. We disagree.

■ The standard for evaluating the effectiveness of counsel is well-known: "The ineffectiveness of counsel is shown where there is merit to the underlying claim, the course chosen by counsel does not have a reasonable basis, and the defendant shows prejudice." *Commonwealth v. Graham,* 522 Pa. 115, 118, 560 A.2d 129, 130 (1989).

■ An ineffectiveness claim, based upon the failure of counsel to call or investigate witnesses, requires an appellant to demonstrate the identity of the witnesses; that counsel knew of the existence of the witnesses; the material evidence the witnesses would have provided; and the manner in which the witnesses would have been helpful to his cause. *Commonwealth v. Polk,* 347 Pa.Super. 265, 500 A.2d 825 (1985); *Commonwealth v. Woodward,* 418 Pa.Super. 218, 227, 614 A.2d 239, 244 (1992) (citation omitted). A defendant must also establish prejudice by demonstrating that he was denied a fair trial because of the absence of his testimony. *Commonwealth v. Nock,* 414 Pa.Super. 326, 606 A.2d 1380 (1992). We must first determine if there is merit to appellant's underlying claim that witnesses should have been presented for the defense.

■ Ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses. *Commonwealth v. Davis,* 381 Pa.Super. 483, 554 A.2d 104 (1989), *allocatur denied,* 524 Pa. 617, 571 A.2d 380 (1989).

Here, appellant's claim lacks arguable merit and his claim of ineffectiveness must fail. Appellant simply makes bald asser-

tions in his brief that two witnesses, Wayne Witherspoon and Ellis Glenn, would have provided testimony that would rebut the Commonwealth's evidence. He provides no affidavits from either of these men averring that they would have been ready and willing to testify at trial. Such a claim does not meet the standard for establishing ineffectiveness and this claim must fail. *Davis, supra.*

Judgment of sentence affirmed.

HUDOCK, J., files a Dissenting Statement.

HUDOCK, Judge, dissenting:

I agree with the majority that this Court's *en banc* decision in *Bujanowski*, 418 Pa.Super. 163, 613 A.2d 1227 (1992), *alloc. den.*, 533 Pa. 642, 622 A.2d 1374 (1993), controls the present case. The trial court erred by allowing the Commonwealth to introduce Bain's prior inconsistent statement as substantive evidence of Appellant's guilt. I do not agree, however, that this error was harmless.

In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), our Supreme Court announced that an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. *Id.* at 405, 383 A.2d at 162. Furthermore, if there is a reasonable probability that an error "might have contributed to the conviction," the error is not harmless. *Id.* at 409, 383 A.2d at 164 (citation omitted).

In this case, I am not convinced *beyond a reasonable doubt* that the admission of Bain's prior inconsistent statement as substantive evidence did not influence the jury's guilty verdict. Contrary to the majority's conclusion, the Commonwealth did not present overwhelming evidence linking Appellant to the murder of Chinn. The cruxes of the Commonwealth's case implicating Appellant were the prior inconsistent statements of Witherspoon and Bain, which were both recanted at the preliminary hearing. The "additional" evidence presented by the Commonwealth which the majority cites as corroborative of Witherspoon's prior inconsistent statement included the following evidence: (1) the pellets which were recovered from

the victim's body matched the twelve-gauge shotgun, (2) the victim died as a result of a wound from a gun fired at close range, (3) Officer John Ross found the victim lying next to a bench, and (4) Witherspoon could have observed the playground where the shooting occurred. Although this evidence is corroborative of portions of Witherspoon's prior inconsistent statement to police, it does not identify Appellant as the man who fired the gun. The "additional" evidence introduced by the Commonwealth does not single out Appellant as the murderer. The majority overlooks the fact that "Hawk" and Jones came with Appellant to Witherspoon's house on the night of the murder to retrieve the gun. According to the Commonwealth's additional evidence, any one of the three men who arrived at Witherspoon's house could have been the perpetrator. The Commonwealth did not present any additional evidence besides Witherspoon's prior inconsistent statement and Bain's improperly admitted statement which identified Appellant as the man who aimed and pulled the trigger. For this reason I cannot conclude that Bain's improperly admitted statement did not contribute to Appellant's guilty verdict.

The majority concludes that Bain's improperly admitted prior inconsistent statement was merely cumulative of Witherspoon's statement. In *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977), Justice Roberts, writing for a plurality of our Supreme Court, explained a cumulative evidence test first propounded by Professor Field. *Id.* at 448–451, 372 A.2d at 777–78; *see* Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale*, 125 U.Pa.L.Rev. 15 (1976). In order for evidence to be considered cumulative and its admission therefore harmless error, the following three requirements must be met: (1) There should be substantial similarity in type of evidence and incriminating factual details between the tainted evidence and the untainted evidence of which it is cumulative. (2) The untainted evidence should be indisputable, either because the facts are in some way affirmatively accepted by the defendant or for other reasons. (3) The untainted evidence is not derived from the tainted evidence. *Rodgers*, at 448–451, 372 A.2d at 777–78.

Moreover, "the cumulative evidence test 'would limit harmlessness to situations in which the unconstitutionally admitted evidence in retrospect was wholly unnecessary.'" *Id.* at 451, 372 A.2d at 778 (citation omitted).

In the present case, I agree with the majority that there is substantial similarity between Witherspoon's statement to police and Bain's improperly admitted prior inconsistent statement. I also agree that the third test is met—Witherspoon's statement was not derived from Bain's statement to police. However, I do not find that Witherspoon's statement was "indisputable." When Witherspoon gave his statement to police which implicated Appellant he was already in police custody and may have been seeking lenient treatment for his cooperation with police. At trial Witherspoon recanted the story he originally told police. Furthermore, the Commonwealth did not present any additional evidence which corroborated Witherspoon's identification of Appellant as the man who shot Chinn.

For these reasons, I dissent from the majority's conclusion that Bain's improperly admitted statement was "wholly unnecessary" and harmless error to admit.