COMMONWEALTH of Pennsylvania,
Appellee,

v.

A.W. ROBL TRANSPORT, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 30, 1999.

Filed Feb. 17, 2000.

Paul D. Welch, Jr., Lock Haven, for appellant.

Michael F. Salisbury, Assistant District Attorney, Lock Haven, for Com., appellee.

Before HUDOCK, EAKIN and BECK, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence entered following Appellant's conviction in the court of common pleas on the charge of transporting foodstuffs in a vehicle used to transport waste.[1] We affirm.

¶ 2 Appellant raises the following two claims:

I. Whether the Court of Common Pleas of Clinton County committed error of law in admitting and using Commonwealth Exhibits 13, 15 and 16 in determining [Appellant's] guilt.

II. Whether the Court of Common Pleas of Clinton County committed error of law and/or abused its discretion in finding [Appellant] guilty when there was insufficient relevant evidence of record to sustain a conviction for a violation of Section 4909(a)(1) of the Pennsylvania Vehicle Code.

Appellant's Brief at 5.

¶ 3 We will consider Appellant's sufficiency claim first. When considering a challenge to the sufficiency of the evidence, we are bound by the following standard of review.

In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. George,* 705 A.2d 916, 918 (Pa.Super.1998) (quoting *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992)), *appeal denied,* 555 Pa. 740, 725 A.2d 1218 (1998).

¶ 4 The evidence may be summarized as follows: On December 10, 1998, Trooper Todd A. Brian of the Pennsylvania State Police saw a tractor-trailer parked in a no-parking area where it was blocking access to a set of scales. Trooper Brian contacted Trooper Kevin A. Miller, who went to the scene. A document produced by the driver of the vehicle showed that it was hauling coffee. Two other documents (Commonwealth's Exhibit 3) concerned a previous load shipped on December 7, 1998. A shipping memorandum prepared by the shipper described that load as eighteen bales of "mix [sic] papar [sic]." Commonwealth's Exhibit 3. A receipt prepared by the operator of the Ottawa County (Ohio) Landfill described the load as "MSW." *Id.* Trooper Miller testified that, based on his knowledge of the Department of Environmental Resources Selected Abbreviation and Acronym Guide, the acronym "MSW" stands for "municipal solid waste." N.T., 2/22/99, at 9.

¶ 5 During the course of an inspection of the vehicle, Trooper Miller observed a sign on the side of the vehicle reading "Licensed Special Waste Hauler." *Id.* at 11; Commonwealth's Exhibit 7. When he opened the rear of the trailer to inspect the contents, he found a load of coffee, and

1. 75 Pa.C.S.A. § 4909(a)(1).

he noticed a "very strong odor of garbage" coming from the vehicle. N.T., 2/22/98, at 12–13.

¶ 6 Edward Pyskaty, a representative of the shipper, testified for the defense that a load described as mixed paper in his company's shipping documents would consist of source-separated recyclable paper. In response, the Commonwealth produced two other shipping memoranda from the same shipper (Commonwealth's Exhibits 12 and 14), each listing eighteen bales of "mix [sic] office papar [sic]," and elicited testimony from Mr. Pyskaty on cross-examination to the effect that there is no difference between a load described as mixed office paper and one described as mixed paper. The Commonwealth also introduced photographs (Commonwealth's Exhibits 13, 15 and 16) of the loads corresponding to those memoranda. The photographs show that neither load consisted entirely of recyclable paper. The load depicted in Exhibit 13, which corresponds to Exhibit 12, contained, among other things, collapsed cardboard boxes and what appears to be an automobile headrest. The load depicted in Exhibits 15 and 16, which correspond to Exhibit 14, contained, among other things, collapsed cardboard boxes and real or artificial roses. The photographs also show that each load was baled.

¶ 7 Section 4909(a)(1) of the Vehicle Code provides:

A person *commits* a violation of this section if he transports or knowingly provides a vehicle for the transportation of any food product or produce intended for human consumption in a vehicle which has been used to transport any municipal, residual or hazardous waste or any chemical or liquid, in bulk, which is not a food product or produce.

75 Pa.C.S.A. § 4909(a)(1). "Food product or produce" is defined as "[a]ny raw, cooked or processed edible substance, beverage or ingredient used or intended for use or for sale, in whole or in part, for human consumption." 75 Pa.C.S.A.

§ 4909(g). "In bulk" means "[n]ot divided into parts or packaged in separate units." *Id.* "Municipal waste," "residual waste" and "hazardous waste" have the meanings given to them in the Solid Waste Management Act, 35 P.S. § 6018.101 *et seq.,* and the Municipal Waste Planning, Recycling and Waste Reduction Act, 53 P.S. § 4000.101 *et seq.* 75 Pa.C.S.A. § 4909(g). "Municipal waste" is defined in the Solid Waste Management Act as:

Any garbage, refuse, industrial lunchroom or office waste and other material including solid, liquid, semisolid or contained gaseous material resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition or [sic] residual or hazardous waste hereunder from a municipal, commercial or institutional water supply treatment plant, waste water treatment plant, or air pollution control facility.

35 P.S. § 6018.103. It is defined in the Municipal Waste Planning, Recycling and Waste Reduction Act as:

Any garbage, refuse, industrial lunchroom or office waste and other material, including solid, liquid, semisolid or contained gaseous material, resulting from operation of residential, municipal, commercial or institutional establishments and from community activities and any sludge not meeting the definition of residual or hazardous waste in the Solid Waste Management Act from a municipal, commercial or institutional water supply treatment plant, wastewater treatment plant or air pollution control facility. The term does not include source-separated recyclable materials.

53 P.S. § 4000.103 (footnote omitted).

¶ 8 Appellant raises two challenges to the sufficiency of the evidence. First, Appellant contends that the evidence failed to establish that the trailer in question had ever been used to transport municipal waste. Second, Appellant contends that

the evidence failed to show that any waste transported in the trailer was transported in bulk.

¶ 9 After review, we conclude that the evidence was sufficient to establish that the vehicle in question had been used to transport municipal waste. The words "Licensed Special Waste Hauler" were painted on the side of the trailer. Trooper Miller testified that he smelled a very strong odor of garbage when the trailer was opened. In addition, the operator of the landfill receiving the previous load issued a receipt on which the load was designated "MSW," which stands for "municipal solid waste." Thus, the trial court could reasonably conclude that the trailer in question had been used to transport municipal waste. Appellant's insistence that the Commonwealth failed to rebut Mr. Pyskaty's testimony that the previous load was source-separated recyclable paper is simply incorrect, as Mr. Pyskaty's testimony on cross-examination and Exhibits 12 through 16 contradicted the testimony on which Appellant relies. We will not second-guess the trial court's credibility determinations on appeal. *See George*, 705 A.2d at 918.

¶ 10 In its second challenge to the sufficiency of the evidence, Appellant contends that the evidence failed to show that any waste it had transported was transported in bulk. This challenge fails because we conclude that under section 4909(a)(1) the Commonwealth does not need to prove that the waste was transported in bulk.

¶ 11 We begin by noting that section 4909(a)(1) is a penal statute. When interpreting a penal statute, we are guided by the following principles:

[A]ll penal provisions should be strictly construed, and . . . where an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused. While strict construction of penal statutes is re-quired, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent. Indeed, it is a clear principle of our jurisprudence that where a statute is unclear on its face, resort must be taken to the intent of the General Assembly in enacting the provision, paying heed to such matters as the occasion and necessity for the statute, the circumstances underlying its enactment, the mischief to be remedied, and the object to be obtained. Moreover, the legislature is presumed, in drafting the statute, not to have intended a result which is absurd.

*Commonwealth v. Wooten*, 519 Pa. 45, 53, 545 A.2d 876, 879–80 (1988) (citations omitted). In addition,

[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S.A. § 1903(a).

¶ 12 Once again, section 4909(a)(1) of the Vehicle Code provides:

A person commits a violation of this section if he transports or knowingly provides a vehicle for the transportation of any food product or produce intended for human consumption in a vehicle which has been used to transport any municipal, residual or hazardous waste or any chemical or liquid, in bulk, which is not a food product or produce.

75 Pa.C.S.A. § 4909(a)(1). After reviewing the section in light of the foregoing principles, we conclude that the phrase "in bulk" modifies only "any chemical or ′ liquid." The placement of the word "any" before "municipal, residual or hazardous waste" and also before "chemical or liquid" indicates that "any municipal, residual or hazardous waste" is being treated as one

group and "any chemical or liquid" is being treated as another. The relative clause "which is not a food product or produce" must be read to modify only "any chemical or liquid" because the various types of waste are by their very nature not food products or produce, whereas chemicals and liquids may (e.g., table salt, milk) or may not (e.g., ammonium nitrate, gasoline) be food products or produce. As it would make no grammatical sense to place a phrase modifying both "any municipal, residual or hazardous waste" and "any chemical or liquid" in between "any chemical or liquid" and a relative clause modifying only "any chemical or liquid," we conclude that "in bulk" refers only to "any chemical or liquid." Therefore, the Commonwealth did not have to prove that Appellant transported municipal waste in bulk in the vehicle used to transport the coffee; it was enough for the Commonwealth to prove, as it did, that Appellant transported municipal waste in the vehicle in some form.

¶ 13 Appellant next challenges the admission of Commonwealth's Exhibits 13, 15 and 16, the photographs of the loads described as mixed office paper in shipping memoranda from Mr. Pyskaty's company. Specifically, Appellant contends that the photographs were irrelevant and that the trial court erred in relying on them to determine that the shipment of December 7, 1998, consisted of waste in bulk. In the alternative, Appellant contends that their potential for prejudicing Appellant outweighed their probative value.

¶ 14 The trial court determines whether evidence is relevant and admissible, and the trial court's ruling on admissibility will not be disturbed absent an abuse of discretion. *Commonwealth v. Carter*, 443 Pa.Super. 231, 661 A.2d 390, 393 (1995). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence." Pa.R.E. 401. In particular,

> [e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Pa.R.E. 406. Finally, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. . . ." Pa.R.E. 403.

■ ¶ 15 The meaning of the term "mixed paper" when used in the shipper's shipping memoranda was at issue in the case, as Appellant based its defense, in part, on the contention that "mixed paper" meant source-separated recyclable paper. Mr. Pyskaty testified to that effect for Appellant. His testimony amounted to an assertion that the routine practice of his company was to use the term "mixed paper" to describe source-separated recyclable paper. Through that testimony, Appellant sought to prove that the company acted in conformity with that routine practice in connection with the load shipped on December 7, 1998.

¶ 16 Mr. Pyskaty's testimony regarding Exhibits 12 through 16 tended to show that his company, in fact, had a different routine practice. Regarding Exhibit 13, Mr. Pyskaty testified as follows:

> A: (Examining Exhibit) That's office mixed paper.
>
> Q: That's what is being shipped out of your operation in New Jersey?
>
> A: Yes.

N.T., 2/22/99, at 29. Regarding Exhibit 16, he testified as follows:

> Q: And that would be the type of cargo that would be carried when you ship it under the category of eighteen bales of mixed office paper.
>
> A: There's plastic with it, plastic office bags, yes.

*Id.* at 33. Although Mr. Pyskaty did not use the term "routine practice," the clear implication of his testimony is that it was his company's routine practice to ship loads such as those pictured in Exhibits 13, 15 and 16 under the category "mixed office paper" or "mixed paper." The exhibits are, thus, relevant to the question of routine practice, which Appellant interjected into the case. Accordingly, Appellant is not entitled to relief on the basis that the exhibits were irrelevant.

█ ¶ 17 Appellant's next claim is that the trial court erred in relying on Exhibits 13, 15 and 16 to determine that the shipment of December 7, 1998, consisted of waste in bulk. Under Pa.R.E. 406, evidence of the routine practice of an organization is relevant to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice. The exhibits in question are evidence of the routine practice of Mr. Pyskaty's company in connection with the use of the term "mixed paper," so the trial court did not err in relying on them to determine the nature of the load shipped on December 7, 1998.

█ ¶ 18 Finally, Appellant contends that the exhibits' potential for prejudicing Appellant outweighed their probative value. Appellant, however, has not developed this argument, and, thus, has waived this claim. *Commonwealth v. Melson*, 432 Pa.Super. 1, 637 A.2d 633, 645 n. 7 (1994).

¶ 19 Judgment of sentence affirmed.