J. A11033/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1003 EDA 2014 |
| | : | |
| CATHERINE SCHAIBLE | : | |

Appeal from the Judgment of Sentence, February 19, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0007633-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1163 EDA 2014 |
| | : | |
| HERBERT SCHAIBLE | : | |

Appeal from the Judgment of Sentence, February 19, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0007634-2013

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 15, 2015**

In these consolidated cases, the Commonwealth appeals from the

judgments of sentence imposed on Herbert Schaible and Catherine Schaible,

husband and wife, on February 19, 2014, by the Court of Common Pleas of

Philadelphia County, as inconsistent with the protection of the public, the

---

* Former Justice specially assigned to the Superior Court.

gravity of the offense, and the rehabilitative needs of the appellees. We affirm.

We adopt the factual history as summarized by the trial court:

> On April 18, 2013, seven month old Brandon Schaible died at his home on Rhawn Street in the City and County of Philadelphia. The medical examiner determined that Brandon had suffered from bacterial pneumonia, severe dehydration and a Group B streptococcus infection. The combination of these conditions caused Brandon's death, and the manner of Brandon's death was ruled a homicide. (N.T., 11/14/13, pp. 23-25; Commonwealth Exhibit C-1).

> Following Brandon's death, the police interviewed his parents, Catherine and Herbert Schaible. Catherine Schaible told police that she had taken Brandon to a doctor shortly after his birth. Other than that doctor visit, Brandon had not seen a doctor prior to his death. Approximately one week before Brandon's death, he exhibited signs of illness. During that time, Brandon vomited, had difficulty eating and sleeping, and his breathing became progressively labored. Mrs. Schaible stated that she and her husband did not seek medical attention for Brandon because of their religious beliefs. Instead, the Schaibles contacted various family members and their pastor, all of whom gathered and prayed for Brandon. Even when Brandon's condition grew grave, the family continued to pray and did not seek medical attention. Mrs. Schaible acknowledged that the decision to forego medical treatment was a violation of the conditions of her probation, but believed that Brandon would be healed by faith. (N.T., 11/15/13, pp. 25-29; Commonwealth Exhibit C-2).

> Herbert Schaible's version of events echoed that of his wife. Mr. Schaible told police that Brandon exhibited signs of illness several days before his death. Mr. Schaible stated that he and his

> wife did not seek medical attention for Brandon because it was against their religious beliefs, and that it would have been considered a sin to seek medical assistance rather than trust in God for Brandon's healing. (N.T., 11/14/13, pp. 29-34; Commonwealth Exhibit C-3).

Trial court opinion, 8/7/14 at 3-4.

On November 14, 2013, the defendants pled ***nolo contendere*** to third-degree murder, endangering the welfare of a child ("EWOC"), and criminal conspiracy. The Commonwealth sought a sentence of 8 to 16 years' imprisonment for each defendant for third-degree murder. This recommendation was at the bottom end of the standard range of the sentencing guidelines. With a prior record score of 2 and an offense gravity score of 14, the sentencing guidelines recommended a minimum sentence of 8 to 40 years' imprisonment in the standard range, and recommended a sentence of 7 years' imprisonment at the lowest end of the mitigated range. The potential range of sentences for the other offenses, EWOC and criminal conspiracy, were not addressed at sentencing. The court deferred defendants' sentencing hearing and ordered a pre-sentence investigation. Catherine Schaible remained free on bail pending sentencing, while Herbert Schaible remained in custody at the Curran Fromhold Correctional Facility in Philadelphia.

On February 19, 2014, the trial court sentenced the defendants to concurrent prison terms of 3½ to 7 years followed by 30 months' reporting probation. In addition, the trial court ordered that the defendants not be

permitted to make any future decisions regarding the medical care of their children.[1]  Finally, the court sentenced the defendants to prison terms of 3½ to 7 years' imprisonment and 30 months' reporting probation for violating the terms of their probation (cases docketed at CP-51-CR-0012965-2009 for Catherine Schaible and CP-51-CR-0012966-2009 for Herbert Schaible).[2]  The charges related to the violation of probation ("VOP") cases, involuntary manslaughter, EWOC, and criminal conspiracy, arose from the 2010 death of another child, Kent Schaible.  That case, like the instant matter, involved the failure of the defendants to seek medical attention for Kent.  That failure led to Kent's death.  On February 2, 2011, the defendants pled guilty.  The Honorable Carolyn Engle Temin sentenced both defendants to 10 years' probation and directed that, as a condition of their probation, the defendants provide each of their other children with routine medical check-ups at least once a year and seek medical attention for their children should they become ill.  The VOP sentences were ordered to run concurrently with the sentences imposed in the instant case.

The Commonwealth filed a timely motion to modify sentence.  On March 14, 2014, the trial court denied the Commonwealth's motion after

---

[1] Family Court Judge Allan L. Tereshko presided over the dependency proceedings related to the defendants and their six minor children.  Each child had been placed in a foster home and had periodic visits with his or her siblings.

[2] Supervision of the defendants' cases was transferred to the Honorable Benjamin Lerner who presided over the instant matter.

hearing further argument from all counsel. Before denying the motion, the court placed on the record a detailed statement of its reasons for departing downward from the sentencing guidelines.

On March 25, 2014, the Commonwealth filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. The Commonwealth raised the following issue: "Did the lower court abuse its discretion in imposing a sentence that is inconsistent with [the] protection of the public, the gravity of the offense, and the rehabilitative needs of the offender, and which in its practical effect imposes no penalty at all for the murder of a child?" (*Id.*) The Commonwealth has challenged the discretionary aspects of defendants' sentences. We begin by addressing our standard of review in sentencing matters:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517-518 (Pa.Super. 2007) (citation omitted).

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. *See Hoch*, 936 A.2d at 518 (citation omitted). An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010) (citations omitted).

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-1266 (Pa.Super. 2014).

Our review of the certified record confirms the Commonwealth's appeal is timely,[3] the issue was preserved in the court below, and the required Pa.R.A.P. 2119(f) statement has been included. Therefore, we must determine whether reasons given in the Rule 2119(f) statement raise a substantial question. Here, the Commonwealth identified the "overarching

---

[3] The record in this case appears to reflect that the Commonwealth's post-sentence motion was filed one day late. However, in response to this court's Rule to Show Cause on the issue of timeliness, the Commonwealth responded that the Philadelphia Court of Common Pleas was closed on Monday, March 3, 2014 due to inclement weather conditions. The post-sentence motion was filed on Tuesday, March 4, 2014.

issue" in this matter as whether the trial court abused its discretion for imposing an excessively lenient sentence that is inconsistent with the sentencing norms. A claim that the trial court has imposed an excessively lenient sentence raises a substantial question. *See Hoch*, 936 A.2d at 518.

In addition to the sentence being lenient, the Commonwealth raises sub-arguments that the sentence depreciates the gravity of the offense and fails to properly consider the defendants' failure to be rehabilitated along with the continuing danger they pose to their surviving children. *See Commonwealth v. Johnson*, 873 A.2d 704, 708 (Pa.Super. 2005) ("A substantial question exists where an appellant sets forth a plausible argument that the sentence . . . is contrary to the fundamental norms underlying the sentencing process."), *appeal denied*, 887 A.2d 231 (Pa. 2005). The Commonwealth also claims the sentencing court relied on mistaken or improper factors to depart from the guidelines. All of these claims raise a substantial question. *See Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa.Super. 2010) (claim that sentencing court relied on improper factors and inaccurate factors presents substantial question for review); *Commonwealth v. Sims*, 728 A.2d 357, 359 (Pa.Super. 1999) (claim that factors court relied on to deviate from guidelines were unreasonable presented a substantial question).

We begin our analysis with the trial court's statements of reasons at the sentencing hearing:

What I intend to do with the sentence is provide for a period of incarceration followed by probation, at the end of which you will be able to resume whatever contact with your children the parties and the law permit but which will enable your youngest child to be old enough so that if for some reason you ever got control of this issue again, this issue of medical care, all of your children will be old enough to make these kinds of decisions for themselves.

I'm departing downward in this sentence for two reasons. One is, of course, the standard criminal justice reason which is that you accepted responsibility and early on entered pleas of ***nolo contendere***. The other and more important is the one that I addressed earlier, and that is you are not the kind of parents generally and this is not the kind of family that ought to be or needs to be torn apart forever. In fact, I believe the contrary is true, your children need you in their lives at some level in some way, you need your children in your lives at some level in some way. The sentence should not prevent that from happening, but what must be prevented from happening is that either one of you ever again have the right to make the kind of determinations about your children's lives that you made for Kent and for Brandon.

So the sentence of the Court is as follows. For both defendants on all of the charges concurrently and on the probation violations concurrently, because you're in violation of your probation, your probation has been revoked and I'm giving you the same sentences for the probation violation as for these new offenses. I'm sentencing you each to a term of incarceration in the state prison system of not less than three and a half, nor more than seven years. That will be followed by a period of 30 months['] probation. That probation will be under the supervision of the State Board of Probation and Parole because they're the ones who will be supervising your parole once you are paroled. The

mandatory costs are imposed. There are no other charges that need to be nolle prossed.

Sentencing hearing, 2/19/14 at 72-74.

On March 14, 2014, the trial court heard argument from all counsel regarding the Commonwealth's motion to modify (increase) the sentences of the defendants. At the end of the hearing, the trial court addressed the Commonwealth's allegations as follows:

> My responsibility in this case is to provide case specific reasons for the downward departure. And I believe, especially after rereading the notes of testimony from the sentencing hearing, I believe that I did that.
>
> l want to address specifically a couple of points[,] and I'm going to start with what Ms. Pescatore [the Assistant District Attorney] raised last because that is the one point on which perhaps there ought to be more clarity.
>
> When I imposed this sentence, aware as I was of the Family Court proceedings thus far, it was my intention and my understanding that the Schaibles probably will never have custody of their children again. And if they ever did, and that is not something that is in this Court[']s power, that's within the jurisdiction of the Dependency Court Judge in Family Court.
>
> But if they did[,] it seemed clear to me when I imposed the sentence that that would never even be considered not until after their sentence in the criminal cases was completed. Not until after whatever time happens to pass before they are released on parole but until ten years plus thirty months.
>
> And one of the things that I considered in that sentence was that the Schaibles['] youngest child[,]

at the end of that period of time[,] will be fourteen years old.

And even in the extremely unlikely event that the Schaibles were given the right to regain custody by a Family Court Judge, at that point all of their children, including the youngest one, would be old enough to have a major say in their own medical care.

However, if that's not clear enough from my original sentence, let me clarify the conditions of any parole and probation which is where I have jurisdiction. To make it clear that during this period of time[,] ten years plus thirty months[,] the Schaibles will not be permitted to make any decisions regarding the medical care of their children.

That was the original intention of my sentence[,] and if I did not make it clear enough then[,] I'll make it clear enough now.

With regard to the other points raised by the Commonwealth[']s request, first of all Ms. Pescatore points out that I did not impose separate sentences for the new offense and the violation of probation and that is correct. But that does [not] mean[,] as the Commonwealth suggests[,] that the violation of probation does not figure in to the sentence that I imposed.

Even in the example that the Commonwealth gave about a defendant who was on probation or parole for a gunpoint robbery and was convicted of another one, if I have both the open case and the probation violation, as is the case here, I'm going to impose one sentence.

The decision isn't really how much time is due on the probation violation and how much time is due for the new case. In my view[,] the decision is that[,] for the sentencing Judge[,] is how much prison time, what is the length of the prison

sentence that the Judge thinks is fair and just under all the circumstances of the case.

So, it's really not accurate to suggest that I did not consider not only that there were new offenses but that these new offenses constituted a direct violation of the Schaibles['] probation[,] because I did.

So, that brings us to the final point[,] which is the length of the sentence. And as Ms. Pescatore says[,] reasonable minds can differ.

I want to make it clear[,] as I thought I did at the last hearing[,] that from this Court[']s point of view[,] imposing an appropriate sentence involves not only the specific offenses, how they are labeled, what their maximums are and what the guidelines are, but it involves a specific examination of all of the facts and circumstances surrounding that offense.

Not every robbery is the same. Not every assault is the same. Not every third degree murder is the same. And it's the Court's responsibility to look beyond the labeling of the offense and the guidelines. That's why the guidelines are advisory, to look at the specific facts and circumstances of a particular offense.

It is also the Court's responsibility not merely to sentence[,] as I said at the sentencing hearing[,] so as to "make the punishment fit the crime".

Our sentencing structure calls for a consideration of all of the facts and circumstances surrounding the defendants, and in this case the defendants['] children, so that one can make the punishment not only fit the crime but the best of my ability make the punishment fit the criminals.

This is unlike any other child endangerment, child homicide by parents or caregivers that this Court has ever seen. And it's unlike it not in my

view because of the so-called religious reasons for the Schaible[s'] action.

I want to make it clear again[,] as I thought I did last week. I give no credence to that. I pay no attention to that. It's offensive to me as a Judge and as a human being when people use extremist ideas about the teachings of any religion[,] including my own[,] to justify horrendous[,] even criminal[,] conduct.

So in case there is any misunderstanding[,] it is not the so-called religious basis for the Schaible[s'] activities here that lead me to the sentence that I imposed.

But I heard the testimony from Ms. Trotty. I saw the videos. I know what all the evidence in the case is. These are not parents who fit the mold of either the standard endangering the welfare of a child caregiver or fit the mold of the standard aggravated assault or murder prosecution involving caregivers and children.

In my view, in my judgment, although what happened here as well []as what happened with Kent is inexcusable, not merely negligent but criminal and justifies a sentence.

These actions were not performed by uncaring, unloving parents. On the contrary[,] one need only listen to Ms. Trotty's testimony and [see] that video and look at all the other evidence in the case about the Schaible[s'] relationship with their children to understand that as that neighbor I referred to said with one exception they're wonderful, caring, loving people. Well[,] the exception puts them in state prison and it ought to[,] as far as I'm concerned.

But the exception also affects[,] in my view[,] how long they ought to be in state prison and how long they should be, they and their children, should be separated from each other.

This is an unusual situation. The Schaible[]s should never have custody of their children especially when they're young because of this one major area of parenting in which they have so horribly failed.

But in every other area of parenting[,] their children and they should be able to resume their relationship not just for them but because it's in the children's best interest, within a reasonable period of time.

People toss around years in sentencing sometimes as if they were jellybeans. Well that's not the case. I believe that a state prison sentence of the length that I imposed is a substantial amount of prison time for Herbert and Catherine Schaible. And I spent a lot of time considering all of the elements that I believe go into an appropriate sentence. That is my best judgment.

Again, reasonable people can differ. The Commonwealth has a right to an appeal. My sentence is likely to be reviewed by a higher court. I understand that, I accept that, I agree that that's the way it ought to be.

But I still think that considering all of the factors that I believe go into a just sentence that these sentences were fair, just and appropriate.

Hearing, 3/14/14 at 13-20.[4]

"[T]he parameters of this Court's review of the discretionary aspects of

a sentence is confined by the dictates of 42 Pa.C.S. § 9781(c) and (d)."

---

[4] We observe that the trial court twice mentioned a period of "ten years plus thirty months." We are unsure what the court was referring to. We are only reviewing the sentence of 3 ½ to 7 years' incarceration followed by 30 months' probation imposed on both defendants.

***Commonwealth v. Daniel***, 30 A.3d 494, 497 (Pa.Super. 2011), quoting

***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007).

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable."

***Commonwealth v. Coulverson***, 34 A.3d 135, 146 (Pa.Super. 2011).

Section 9781(d) provides that when reviewing a sentence, we must

consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

> [T]he term "unreasonable" generally means a decision that is either irrational or not guided by sound judgment. [A] sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b).

***Daniel***, 30 A.3d at 497, quoting ***Walls supra***.

42 Pa.C.S.A. § 9721(b) offers the following guidance:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing . . . .

42 Pa.C.S.A. § 9721(b).

> [T]he weighing of the factors under 42 Pa.C.S. § 9721(b) [is] exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa.Super. 2012), quoting

*Commonwealth v. Bowen*, 975 A.2d 1120, 1123-1124 (Pa.Super. 2009)

(citations omitted).

Instantly, the Commonwealth first contends the defendants' sentence is excessively lenient because the trial court failed to impose an additional penalty on the defendants for the killing of a second child, Brandon. (Commonwealth's brief at 22-23.) The record does not support the Commonwealth's contention.

The trial court imposed a concurrent sentence for the probation violation in the case stemming from the death of Kent. The court made it

clear that it considered the probation violation and the new case as each affected the other, and therefore imposed a larger aggregate sentence than it might otherwise have imposed. (Hearing, 3/14/14 at 15-16.) For the probation violation and the instant case, the defendants were sentenced to a term of incarceration of 3½ to 7 years, to be followed by a term of probation of 2½ years. The sentences were to be served concurrently. The Commonwealth appealed the sentence for the new case, but did not appeal the sentence for the probation violation.

Next, the Commonwealth argues the sentence depreciates the gravity of the offense and fails to properly consider the defendants' failure to be rehabilitated and the continuing danger they pose to their surviving children. (Commonwealth's brief at 23.) Basically, the Commonwealth is challenging the weight the trial court assigned to the Section 9721(b) considerations. The trial court recognized the defendants were possibly a danger to their children, but not a danger to the general public.[5] The trial court explained:

> [T]hese defendants are not "typical" of defendants convicted of murder. Aside from the instant matters, the defendants have no criminal record. Moreover, the defendants have no history of violence in general or, more specifically, with regard to their children. On the contrary, all of the evidence presented at sentencing shows the Schaibles to be loving and caring parents, with the significant exception of their absurd and dangerous views on medical care for their children.

---

[5] At the sentencing hearing, the prosecutor stated, "The only people [the defendants] are a danger to are their own children." (Sentencing hearing, 2/19/14 at 36.)

Trial court opinion, 8/7/14 at 6.

With the above in mind, the trial court fashioned a sentence it deemed to be of sufficient length that would protect the defendants' other children. The trial court's order did not permit the defendants to have any say in medical decisions for their children. While the trial court anticipated the defendants would have little chance of ever regaining custody,[6] it nevertheless planned for this unlikely contingency by imposing a sentence of such length that the youngest Schaible child would be 14 years old and capable of a say in his own medical care by the end of the defendants' supervision.

Next, we turn to whether the sentence was consistent with the gravity of the offense. The Commonwealth argues the trial court failed to appreciate the gravity of the offense. (Commonwealth's brief at 24.) According to the Commonwealth, the defendants were given a lenient sentence of 10 years' probation for killing Kent under similar circumstances, yet this lenient sentence did nothing to prevent the same thing from happening to Brandon. (*Id.*)

---

[6] Following a hearing on August 4, 2014, Judge Tereshko entered orders permanently terminating the parental rights of both Herbert and Catherine Schaible as to all of their children. The court further ordered the Philadelphia Department of Human Services ("DHS") to plan for the adoption of each child. The court entered identical orders for each child.

At sentencing, the trial court told the defendants, "You've killed two of your children, that's it in a nutshell." (Sentencing Hearing, 2/19/14 at 71.) Additionally, the court stated:

> So I share completely the Commonwealth's outrage about these killings because that's what they are, these killings, and I understand that the Commonwealth's sentencing recommendation, which after all, is at the bottom end of the standard range of our sentencing guidelines, is not in any way an unreasonable recommendation for the crimes committed. But our sentencing code and our sentencing philosophy in this country is not simply to let the punishment fit the crime, it's to have the punishment fit not only the crime, but the criminal also.

*Id.* at 68.

In its Rule 1925(a) opinion, the trial court further explained:

> Here the parents have demonstrated consistent love, devotion and support for their children. There is absolutely no history of violence or neglect outside of the Schaibles' totally unjustifiable decisions to deny their children medical attention because of the nonsensical demands of their church. This conduct alone calls for a harsh sanction, and the Schaibles have earned their state prison sentences. But their conduct simply cannot be equated with the conduct of defendants in the vast majority of child abuse/child neglect homicide cases, and it is those cases and those defendants which are contemplated by the sentencing guidelines.

Trial court opinion, 8/7/14 at 6. Based on the above, the record does not support the Commonwealth's argument that the trial court did not appreciate the gravity of the defendants' offense. Trial courts are obliged to consider each defendant individually and pronounce a sentence based upon

the facts, findings, and circumstances presented. The fact that the trial

court came to a different conclusion than the Commonwealth does not mean

the trial court was either unreasonable or abused its considerable discretion.

Next, the Commonwealth argues the trial court failed to properly

consider the defendants' failure to be rehabilitated. The Commonwealth is

referring to the fact the defendants had already watched one child die due to

their failure to obtain medical attention for that child. The same conduct

occurred once more, resulting in Brandon's death. In both cases, the

Schaibles stated they did not seek medical attention because it was against

their religious beliefs, and that it would have been considered a sin to seek

medical assistance rather than to trust in God for the children's healing.

The trial court addressed this argument as follows:

> First, it has been conceded from the outset of these cases that the Schaibles have never been a danger to the general public, or to anyone except their own children. (N.T., 2/19/14, pp. 34, 3[]). As demonstrated earlier in this Opinion, the court's sentences fully protect even the youngest of the Schaible children (Supra, pp. 1-2, 5-6, ftn.2) from future adverse consequences stemming from their parents' belief about medical treatment.
>
> The Commonwealth also claims that these sentences are inconsistent with appellees' rehabilitative needs. This is also not accurate. In this court's view, at their sentencing hearing the Schaibles expressed grief, great remorse and sincere understanding of their own responsibility for the deaths of both children (N.T., 2/19/14, pp. 60-64). Undoubtedly, for Brandon and Kent Schaible this understanding and acceptance of responsibility comes far too late. But, I am not inexperienced in

> listening to defendants' expressions of remorse and acceptance of responsibility at sentencing, and I firmly believe that Herbert and Catherine Schaible finally understand the consequences of what they have done and why they made these terrible wrong choices. To the extent such a thing is possible, they are rehabilitated.

Trial court opinion, 8/7/14 at 10.

Here, the trial court observed the defendants at sentencing and concluded that their statements of remorse were sincere and worthy of consideration. We cannot second-guess this determination simply because it does not please the Commonwealth any more than we will second-guess a trial court's determination that displeases a defendant. ***See Commonwealth v. A.W.Robl Transport***, 747 A.2d 400, 403 (Pa.Super. 2000) (Superior Court will not second-guess the trial court's credibility determinations on appeal), ***appeal denied***, 764 A.2d 1063 (Pa. 2000).

Last, the Commonwealth argues the trial court relied on mistaken or improper factors to depart from the guidelines. The trial court's opinion is replete with the reasons given for the sentences imposed. After setting forth its reasons along with pertinent discussion, the trial court ended by stating:

> At its core, the Commonwealth's issue with this court's sentences comes down to the question of punishment: the Commonwealth believes the Schaibles have not been punished sufficiently for their conduct and its horrendous consequences. This is a sincerely held position which the court deeply respects. But, it is also a position with which this court profoundly disagrees.

> The court imposed a significant state prison sentence on two conscientious parents who believed - erroneously and tragically - that they were raising their children with love and caring. In all [but] one critically important respect, they were. At both sentencing hearings and in this opinion, the court has articulated its specific, case related reasons for its significant downward sentencing departures. Respectfully, the placing of those reasons on the record, and the reasons themselves, demonstrate that this court did not abuse its discretion in imposing these sentences.

Trial court opinion, 8/7/14 at 10. The record demonstrates the trial court understood the severity of the defendants' crimes, but was convinced the defendants were markedly different from the usual defendant convicted of third-degree murder in cases involving the death of a child. In those cases, the parents or caregivers usually exhibit violence towards children or there is a sustained pattern of abuse and/or neglect. The trial court found this case atypical in that the defendants exhibited consistent love, devotion, and support for their children. Additionally, the trial court had the opportunity to review a pre-sentence investigation report. *See Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors).

To conclude, the Commonwealth's appeal seems to be grounded in mere dissatisfaction with the sentence imposed, as the court did not follow the Commonwealth's recommendation of 8 to 16 years for third-degree

murder; such an argument generally fails when made on behalf of the defendant, and gains no potency simply because it is advanced by the Commonwealth instead. We recognize that a significant downward departure from the sentencing guidelines will no doubt raise a cynical eye. However, absent statutory mandates, such deviations are permitted provided the trial court's decision is not unreasonable or an abuse of discretion. As previously stated, trial courts are obliged to consider each defendant individually and pronounce a sentence based upon the facts, findings, and circumstances presented. It is our determination that the trial court followed the law on sentencing. The certified record does not support the Commonwealth's claims. While another court might have handed down a different sentence, that is not proof of an abuse of discretion or an unreasonable result. Accordingly, we find no abuse of discretion or error of law.

The defendants' judgments of sentence are affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2015