J-S53026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
v.                     :
:
:
:
CHRISTOPHER MOORE        :
:
          Appellant       :   No. 2409 EDA 2017

Appeal from the PCRA Order June 27, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007232-2010

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:             **FILED NOVEMBER 27, 2018**

Christopher Moore appeals, *pro se*, from the order entered on June 27, 2017, in the Court of Common Pleas of Philadelphia County, denying him relief on his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we vacate Moore's sentence for robbery and we affirm in all other regards.

A jury convicted Moore on October 1, 2012,[1] of second degree murder, robbery and conspiracy.[2]  Moore took part in the attempted armed robbery of a reputed drug dealer, and shot and killed her as she sat in a car.  Moore was

_____

* Retired Senior Judge assigned to the Superior Court.

[1] This was Moore's second trial.  His first trial ended with a hung jury.

[2] 18 Pa.C.S. §§ 2502(d), 3701, and 903, respectively.

seen on closed circuit camera approaching the car, and shots being fired. He was then seen running to another vehicle that was owned by his co-defendant, Michael Primus. After apprehension, Moore gave a statement to the police admitting his participation in the crime, claiming he had been promised to be paid more than $30,000 from the $320,000 they anticipated stealing from the drug dealer. Upon conviction, Moore was sentenced to life imprisonment pursuant to the murder charge and a separate 10-20 year sentence for the robbery, which was the underlying felony to the second-degree murder charge.

On direct appeal, Moore challenged the sufficiency of the evidence and was afforded no relief. The Pennsylvania Supreme Court denied Moore's petition for allowance of appeal on October 29, 2014. *See* 325 EAL 2014. Moore filed this timely PCRA petition on September 24, 2015.

Moore was appointed counsel, who filed an amended petition. Counsel subsequently filed a *Turner/Finley*[3] no merit letter with the PCRA court and petitioned for leave to withdraw as counsel. Proper notice was given to Moore, and counsel was permitted to withdraw. The PCRA court provided Moore with proper notice of intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907. Moore filed no repose to either counsel's notice nor to the

---

[3] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (setting for the requirements for counsel to withdraw from representation in a PCRA matter.)

PCRA court's notice. The petition was denied on June 27, 2017. Moore filed this timely appeal, *pro se*, on July 10, 2017.[4]

Our standard of review for this matter is both well settled and straightforward, "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." **Commonwealth v. Kretchmar**, 189 A.3d 459, 462 (Pa. Super. 2018) (citation omitted).

The PCRA court has provided a thorough assessment of the claims Moore raised in his amended petition. To the limited extent those claims have been preserved by argument in his *pro se* Appellant's Brief, we rely on the PCRA court's opinion at pages 4-12, and direct the parties to attach a copy of that opinion in the event of further proceedings. We take particular note of the PCRA court's determination that Moore's 10 to 20 year sentence for robbery must be vacated. It has long been the rule that when a defendant has been convicted of second-degree murder, a separate sentence cannot be imposed on the felony underlying the murder conviction. **Commonwealth v. Fortune**, 451 A.2d 729, 731 (Pa. Super. 1982). Accordingly, we agree with the PCRA court and vacate the 10-20 year sentence imposed on Moore for robbery. This action has no practical effect on Moore's sentence as he is still serving a mandatory life sentence for second-degree murder.

---

[4] The PCRA court did not require Moore file a Pa.R.A.P. 1925(b) statement.

Moore's *pro se* brief contains claims that are being raised for the first time on appeal. As such, these arguments will not be addressed substantively. ***See Commonwealth v. Brown***, 178 A.3d 1290, 1291 (Pa. Super. 2018) (Issues not raised in the lower court are waived and cannot be raised for the first time on appeal); Pa.R.A.P. 302(a) (same).

Specifically, Moore's first argument is:

> The trial court erred and caused irreparable harm and prejudice to appellant by dismissing appellant's PCRA petition based upon a blatantly biased, unreasonable determination of the actual facts of record and, resulting in a fundamental miscarriage of justice, thereby, inflicting further injury upon an "actually innocent" human being and the reinstatement of appellant's PCRA rights should be ordered, new PCRA counsel should be appointed along with the PCRA court's immediate recusal.

Appellant's Brief at 29.

An example of the "blatantly biased, unreasonable determination of the actual facts" Moore refers to is a reference to trial counsel's closing argument when he stated:

> "I asked Mr. Berry:[5] Gee, when you were back at the preliminary [N.T., 06/02/2010, P. 94, (lines 7-12)] hearing and you said you went out to see what was going on and what Chris [the defendant] might have been doing, and you were asked a whole [sic] of questions? And this question was asked of you: Do you remember what he was doing? And Mr. Berry's answer was, No. Because it's not a crime for being on the streets. I'm not worried about what he is doing. I'm worried about what the girl is doing with the big bust. That's what I'm worried about." Id., at 167, Lines 9-22.

_____

[5] This is the same Mr. Berry that Moore claims did not testify at trial.

In the present case, this Pro se Appellant would like to pause momentarily, to point out to this Honorable Court the following <u>fact</u> which not only sheds light on trial counsel's wholesale incompetence, but trial counsel's hint of Alzheimer's disease.

FACT: Steven Berry <u>did</u> <u>not</u> say "Bust".  He <u>did</u> say "Butt".

Appellant's Brief at 37 (underlining in original).  This argument was not raised before the PCRA court and is waived.

Second, is a group of claims falling under general argument:

Trial/direct appellate counsel failed to render constitutionally effective assistance, infecting the entire trial so that the resulting convictions and direct appeal was violative of Petitioner's right to effective assistance of counsel and due process of law under the Federal and State Constitutions, denying Petitioner a fair trial and meaningful appellate review for the following reasons:

*Id*. at 50.

There are five separate sub-headings that follow.  They are:

a) Trial/Direct appeal counsel failed to impeach lead Detective Thomas Gaul's perjured testimony with several critical pieces of evidence including: (1) The Notes of Testimony in regard to Appellant's (1st) first trial revealing such perjury; (2) The conflicting testimony of said Detective's partner John Verrecchio elicited at said (1st) first trial; (3) The (.9 mm)[6] nine-millimeter Gun Box evidence recovered during the execution of a search-warrant of the vehicle/residence of Appellant's alleged co-conspirator Michael Primus.

---

[6] This is a somewhat common error.  There is no such thing as a .9 mm gun or projectile.  It is a 9 mm gun or projectile.  A .9 mm projectile would be slightly smaller than the end of a medium tip ballpoint pen.  A 9 mm projectile is approximately the size of a .38 or .354 caliber projectile.  Moore correctly refers to 9 mm in other parts of his brief.  No caliber measurement in millimeters begins with a decimal point.  We mention this, not to criticize Moore, but only as a general notice to help prevent any such future inadvertent misrepresentations.

*Id*.

None of these issues was raised before the PCRA court and so all are waived.

> b) Trial counsel failed to render Constitutionally effective assistance of counsel, wherein counsel failed to conduct an adequate factual and legal pre-trial investigation of defendant's illegally seized cellphone and cellphone records, which should have been argued at defendant's Motion-to-Suppress hearing.

*Id.* at 57. This issue was not raised in the PCRA court and has been waived.

> c) [T]rial counsel failed to investigate, confer, and or, object to Valerie Jordan's (Juror #7) abrupt dismissal, and said juror's ex-parte communication with Court Officer Menna.

*Id.* at 62. This issue was not raised in the PCRA court and has been waived.[7]

> d) Trial counsel failed to "Object" and request a side-bar with the Court before stipulating in open-court to Appellant's alleged confession.

*Id.* at 69.

The issue of Moore's confession was raised in Moore's PCRA petition and was discussed and properly disposed of in the PCRA court's 1925(a) opinion, *supra*. Moore is not entitled to relief on this issue.

> e) Failure to Investigate, Effectively Cross-examine, and Consult/Present Defense Expert.

*Id.* at 72.

The issue of cross-examining medical examiner Dr. Gary Collins was raised and addressed by counsel in the *Turner/Finley* no merit letter. PCRA

---

[7] It appears Juror 7 realized during trial that she knew Moore's grandmother, who was seated behind him at trial.

counsel notes that Dr. Collins was cross-examined regarding inconsistencies between his report, testimony at Moore's first trial and his second trial. To the extent that Moore complains the cross-examination itself was not effective, the jury that convicted Moore, as fact-finder, was entitled to resolve the inconsistencies as they saw fit and to believe Dr. Collins' trial testimony.[8] **See Commonwealth v. Horne**, 89 A.3d 277, 286 (Pa. Super. 2014) (jury resolved the inconsistencies among the testimonies and reached a verdict).

Moore's claim of ineffective assistance in failing to consult or present an expert to challenge Dr. Collins was not raised in the PCRA court and has been waived.

Moore's final claim is another multi-pronged challenge:

Whether Post Conviction Counsel's reckless disregard for the truth and reckless disregard for the conviction of an "actually innocent" petitioner and perfunctory performance summarized in the following derelictions of duty and breach of professional responsibility to the lawyer/client relation, rendered his representation below ineffective assistance of counsel, forfeiting and depriving petitioner of his constitutional right to meaningful appellate review under the Post Conviction Relief Act.

Appellant's Brief at 76.

Moore raises five specific instances of alleged dereliction of duty on the part of PCRA counsel. Despite receiving proper notice regarding both the filing of PCRA counsel's **Turner/Finley** no merit letter and the PCRA court's Rule 907 intention of dismissing the claim without a hearing, Moore never raised

---

[8] Dr. Collins originally believed the fatal shot showed evidence of being a close contact wound, which opinion he later amended to being uncertain of how far away the gun was when the shot was fired.

any issues regarding PCRA counsel's stewardship prior to the filing of his *pro se* appellant's brief. Accordingly, we need not address the specifics of Moore's argument. We note again, as we have above, that the claims have been waived for failure to raise them in the court below.

Moore has also filed a motion to remand with leave to amend his PCRA petition. As noted above, Moore was given proper notice of his rights. Those notices used the standard language provided to all similarly positioned petitioners. He failed to exercise those rights. This motion is denied.

Order affirmed. Sentence for robbery is vacated. Parties are directed to attach a copy of the PCRA court's November 22, 2017 Opinion in the event of further proceedings. Motion to remand is denied.

Judge Platt joins this memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/18

- 8 -

Circulated 10/30/2018 04:09 PM

**FILED**

NOV **2 2** 2017

Office of Judicial Record
Appeals/Post Trial

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0007232-2010

          :

      v.           :

          :

CHRISTOPHER MOORE      :      SUPERIOR COURT



CP-51-CR-0007232-2010 Comm v Moore, Christopher
Opinion

8033087871

**OPINION**

Byrd, J.                             November 22, 2017

On October 1, 2012, a jury convicted Christopher Moore of second degree murder, robbery and criminal conspiracy. On that day, petitioner was sentenced to life imprisonment without the possibility of parole. On October 11, 2012, petitioner filed a post-trial motion which was denied on February 11, 2013. Petitioner filed a notice of appeal on March 13, 2013. On March 15, 2013, petitioner was ordered to file a statement of matters complained of on appeal. Said statement was filed on April 5, 2013. On June 6, 2013, this court issued an Opinion and the Superior Court affirmed the judgment of sentence. The Supreme Court denied petitioner's allowance of appeal petition.

On September 24, 2015, petitioner filed a Post Conviction Relief Act (PCRA) petition. Petitioner filed a *pro se* amended petition on March 22, 2017. On April 25, 2017, counsel filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988) and *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988). This court took the "no merit" letter under advisement, and issued a notice of intent to dismiss the PCRA petition pursuant to

Pennsylvania Rule of Criminal Procedure 907 on May 26, 2017. On June 27, 2017, this court formally dismissed petitioner's PCRA Petition. On July 10, petitioner filed a notice of appeal.

## STATEMENT OF FACTS

The following facts are reproduced from this court's June 11, 2013 Opinion:

On November 21, 2009 at approximately 11:30p.m., decedent Marlena Green and her friend DeAndre Williams headed toward the 200 block of Berkley Street in Philadelphia to complete a drug transaction. (N.T., 09/26/12 p. 9). Ms. Green, who sold marijuana, was planning to execute a drug sale to a Mr. Jeffery Perry at that location. (N.T., 09/26/12 p. 9). Mr. Williams and Ms. Green arrived at 237 W. Berkley Street, and Mr. Perry entered the back seat of the vehicle. (N.T., 09/26/12 p. 9). Shortly thereafter, defendant Christopher Moore approached the passenger side of the vehicle, wearing all black clothing and a brown leather jacket, and pointing a .357 revolver at the window. (N.T., 09/25/12 p. 157). Seeing the gun pointed at the passenger window of the vehicle, Mr. Williams attempted to flee the scene, revving the engine and attempting to pull out from his parking space. (N.T., 09/25/12 p. 165). Defendant fired two (2) shots as the vehicle switched into gear and started to pull away. (N.T., 09/26/12 p. 59). Ms. Green ducked as the vehicle moved, but she was struck by a bullet in the back of her head. (N.T., 09/25/12 p. 167). After the gunshots, Mr. Williams rushed Ms. Green back to her family's home on the 500 block of Clapier Street and called police. (N.T., 09/26/12 p. 47). Officers arrived on the scene within minutes, and Ms. Green was taken to Temple Hospital where she was pronounced dead within minutes of her arrival. (N.T., 09/26/12 p. 48).

Officers arriving on the scene attempted to gather evidence about this crime, but were unable to locate any ballistics evidence in the area where the shooting took place. (N.T., 09/26/12 p. 67). Officers were able to recover a bullet fragment from the passenger door of Mr. Williams' Nissan Altima, and a second bullet fragment was later recovered from Ms. Green's temple. (N.T., 09/26/12 pp. 65, 106). Officers were also able to recover video surveillance footage from the area in the minutes surrounding the murder. (N.T., 09/26/12 p. 21). The video captured a male, later identified as defendant, walking across the street toward Mr. Williams' vehicle just before the vehicle's brake lights were activated, shots were fired, and the vehicle sped away. (N.T., 09/26/12 pp. 21-23). After the shooting, the video also showed defendant running to a large black SUV, later determined to be a black Chevrolet Tahoe belonging to a Michael Primus. (N.T., 09/26/12 p. 23). Based on the license plate visible in the video, officers located the vehicle and arrested Michael Primus on November 23, 2009. (N.T., 09/26/12 p. 36).

On November 22, 2009, Steven Berry was arrested while attempting a robbery at a McDonald's restaurant in Philadelphia. (N.T., 09/26/12 p. 10). Upon his arrest, Mr. Berry informed detectives that he had information about a murder committed the night before, and was transported to homicide detectives. (N.T., 09/26/12 p. 10). Mr. Berry gave a statement on November 24, 2009 wherein he identified Mr. Primus as the person responsible for orchestrating the robbery of Ms.

2

Green, and identified defendant as the shooter. (N.T., 09/26/12 p. 13). He explained that Ms. Green was Mr. Perry's marijuana connection and that he had set Ms. Green up to be robbed and kidnapped. (N.T., 09/26/12 p. 171). He further explained that he and three other parties were in Mr. Primus' vehicle when Anthony "Al" Thomas, called Mr. Primus, who placed the call on speakerphone, and informed the occupants of the vehicle that the plan "was going down," and instructed them to drive to Berkley Street. (N.T., 09/26/12 p. 164). The men drove around to the 200 block of Berkley Street and parked at the end of the block thereby forcing the vehicle Ms. Green would subsequently arrive in to park farther up the street. (N.T., 09/26/12 p. 164). When Mr. Thomas' vehicle arrived, it parked across the street from Mr. Primus' truck, and both cars awaited the arrival of Ms. Green. (N.T., 09/26/12 p. 164). When Ms. Green arrived, accompanied by Mr. Williams as her driver, Mr. Perry emerged from his home and entered the backseat of the vehicle. (N.T., 09/26/12 p. 165). Mr. Berry further explained that defendant then pulled out a gun and proceeded toward the car in which Ms. Green was seated. (N.T., 09/26/12 p. 165). As this happened, Mr. Berry emerged from Mr. Primus' truck to watch defendant's actions, and observed defendant point the gun at the passenger window and fire it twice. (N.T., 09/26/12 p. 165). After the shots were fired, both defendant and Mr. Berry entered Mr. Primus' vehicle, and together the men travelled to a "safe house" owned by another male in North Philadelphia. (N.T., 09/26/12 p. 165).

Based on their investigation, an arrest warrant was prepared for defendant on November 25, 2009. (N.T., 09/26/12 p. 36). However, officers were unable to locate defendant, and he was not apprehended until December 10, 2009. (N.T., 09/26/12 pp. 36-38). On December 1 1, 2009, defendant gave a statement to detectives wherein he admitted his involvement in the crime. (N.T., 09/26/12 pp. 54-59). Defendant explained that the robbery had been orchestrated by Mr. Perry, Mr. Thomas, and a man identified only as "O.G." (N.T., 09/26/12 p. 54). Defendant's role in the robbery was that of gunman, and his job was to force Ms. Green into the truck driven by Mr. Primus, where the men would tie her up and compel her to disclose her source and/or stash house, which the men would then rob, anticipating proceeds of approximately $320,000. (N.T., 09/26/12 pp. 57-58). Defendant explained that Mr. Perry was the person responsible for the setup, and as he entered the backseat of the vehicle, he motioned for defendant to quickly approach. (N.T., 09/26/12 p. 58). Defendant further explained that he approached the vehicle carrying a .357 magnum revolver that was given to him by Mr. Primus, and that upon approaching, he immediately demanded that the vehicle's occupants stop moving. (N.T., 09/26/12 p. 59). Ms. Green complied with this request, but Mr. William did not, choosing instead to attempt to get away. (N.T., 09/26/12 pp. 59). Upon observing Mr. Williams' motions around the gear shift and center console, defendant grew concerned that Mr. Williams was "reaching" and fired his weapon twice before the vehicle sped away. (N.T., 09/26/12 pp. 54-59). Defendant went on to explain that he only learned Ms. Green had been shot and was deceased some four (4) days later, when informed by Mr. Thomas. (N.T., 09/26/12 p. 60). Finally, defendant explained that although he anticipated receiving $35,000 for his participation in the robbery, he never received any proceeds, and returned the gun to Mr. Primus after firing the fatal shots. (N.T., 09/26/12 p. 60).

3

*Commonwealth v. Moore*

Petitioner raised the following issues in his amended *pro se* PCRA petition:

a. Petitioner was denied the effective assistance of counsel, as guaranteed under the United States and Pennsylvania Constitution when trial counsel Regina M. Coyne, esquire failed to investigate, and or call to the stand Commonwealth's key-witness Steven Berry, despite petitioner's demands for her to do so. The Commonwealth, for tactical reasons, decided that it would be in their best interest to remove Steven Berry from it's case, in fear of receiving a second mistrial, and succeeded. Despite Steven Berry being key-witness, Commonwealth dismissed him, certain that Mr. Berry's testimony was too damaging, and was not sufficient to permit a rational trier of fact to find petitioner guilty beyond a reasonable doubt. And there is a reasonable probability that, absent the errors, the factfinder would have had reasonable doubt concerning petitioner's guilt.

b. The sentence imposed on the robbery charge is illegal.

c. Trial counsel was ineffective for failing to present an "Other Suspect Defense."

d. A Brady Violation occurred after the Commonwealth decided not to present their Key-witness into it's case. In Brady, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Impeachment evidence unquestionably falls under Brady's purview and cannot be suppressed by the prosecution. Steven Berry was impeachment evidence. Commonwealth withheld Steven's Berry's criminal records. See Wilson v. Beard, 589 F.3d 651, 664 (3d Cir. 2009).

e. Brady violation. The suppressed Brady-material…An inconsistent statement by the Commonwealth's Medical Examiner Dr. Grey L. Collins, and documents indicating that another individual committed the murder. The withholding of these pieces of evidence denied petitioner a fair trial in state court.

f. Abuse of discretion. Trial Judge Sandy L.V. Byrd abused his discretion when he refused to entertain petitioner's motion to suppress his coerced confession which had been obtained in violation of his Constitutional rights to remain silent.

## DISCUSSION

The Post-Conviction Relief Act (PCRA) affords collateral relief to those individuals convicted of crimes they did not commit and to those individuals serving illegal sentences. 42 Pa. C.S. §9542. Claims pursuant to the PCRA are extraordinary assertions that the judicial system failed; they are not merely direct appeal claims that are made at a later stage of the judicial proceedings. *Commonwealth v. Rivers*, 786 A.2d 923 (Pa. 2001). A petitioner is entitled to file all PCRA petitions, including second and subsequent petitions within one (1) year from the date his judgment of sentence becomes final. 42 Pa. C.S. §9545(b)(1); 42 Pa. C.S. §9545(b)(3). A petitioner

4

is eligible for relief under the PCRA if he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa. C.S. §9543(a)(2) (setting forth the eligibility requirements of the PCRA). *Commonwealth v. Ligons*, 971 A.2d 1125 (Pa. 2009).

A petitioner may be entitled to relief under the PCRA if he is able to plead and prove that a conviction or sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa. C.S. §9543(a)(2)(ii). It is the ineffectiveness claim, not the underlying error at trial, which is reviewed. *See Commonwealth v. Clayton*, 816 A.2d 217 (Pa. 2002). Under the PCRA, an allegation of ineffective assistance of counsel amounts to constitutional malpractice where counsel's incompetence deprived a defendant of his Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Williams*, 782 A.2d 517 (Pa. 2001).

The law presumes that counsel was effective, and the petitioner carries the burden of proving otherwise. *Commonwealth v. Baker*, 614 A.2d 663, 673 (Pa. 1992). To prevail on an ineffective assistance of counsel claim, a three-pronged test must be satisfied: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and, (3) petitioner must prove that counsel's actions or inaction prejudiced the outcome of the case. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Furthermore, counsel's choices cannot be evaluated in hindsight, but rather should be examined in light of the circumstances at that time. *See Commonwealth v. Hardcastle*, 701 A.2d 541 (Pa. 1997). Even if there was no reasonable basis for counsel's course of conduct, a petitioner is not entitled to relief if he fails to demonstrate prejudice. *See Commonwealth v. Douglas*, 645 A.2d 226 (Pa. 1994).

Petitioner raises six claims in his amended\*pro se* PCRA petition: (1) petitioner was denied the effective assistance of counsel, as guaranteed under the United States and Pennsylvania Constitutions when trial counsel Regina M. Coyne, failed to investigate and or call the Commonwealth's key-witness during trial, despite petitioner's demands for her to do so; (2) the trial court imposed an illegal sentence for robbery; (3) trial counsel was ineffective for failing to present "Other Suspect Defense"; (4) a *Brady* violation occurred when the prosecution failed to present its key-witness; (5) a *Brady* violation occurred because counsel failed to cross-examine the medical examiner on an inconsistent statement – and evidence that another individual committed the murder was suppressed by the Commonwealth; (6) the trial court abused its discretion when it refused to entertain the petitioner's motion to suppress. These claims are meritless.

As the court held in *Commonwealth v. Fisher*, 813 A.2d 761, 767 (Pa. 2002), "[s]peculation by hindsight that a different strategy might possibly have been successful is not the test which establishes ineffectiveness of counsel." In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court instructed that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Additionally, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Howard*, 533 719 A.2d 233, 237 (Pa. 1998). The Court has further declared that "[a] chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899

A.2d 1060, 1064 (Pa. 2006) (quoting *Howard*, 719 A.2d at 237). Indeed, "a claim of ineffectiveness will not succeed by comparing, in hindsight, the trial strategy trial counsel actually employed with the alternatives foregone." *Commonwealth v. Miller*, 605 987 A.2d 638, 653 (Pa. 2009).

Petitioner first contends that he received ineffective assistance of counsel because trial counsel failed to investigate and or call Steven Berry to testify despite petitioner's demands to do so. To establish counsel's ineffectiveness for failure to call a witness, petitioner must show that:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of the witness; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004). *appeal denied*, 860 A.2d 123 (Pa. 2004) (quoting *Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super 2002).

Petitioner has not properly established this claim. He has failed to attach a certification or affidavit from Steven Berry to his petition, and he has failed to show how Steven Berry's testimony would have changed the outcome of the trial. *See Commonwealth v. Carter*, 661 A.2d 390, 396 (Pa. Super. 1995). Furthermore, in order to demonstrate prejudice as a result of counsel not calling a witness, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Counsel will not be found ineffective for failing to call a witness unless petitioner can demonstrate that the witness's testimony would have been helpful to his cause. A failure to call a witness is not *per se* ineffective assistance of counsel, for such decisions usually involves matters of trial strategy. *Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012). Indeed, the trial record indicates that trial counsel consulted with petitioner

and he agreed, for tactical reasons, that Steven Berry would not be called as a witness. N.T. 9/27/2012 at 50-51, 53-54, 150, 156-157:

| | |
|---|---|
| **Counsel:** | Your Honor, I did have an opportunity to speak about the possibility of calling another witness in this case with my client this morning and after discussing the matter with him, I have made a decision not to call that witness. |
| **The Court:** | Is he in agreement with that? |
| **Defendant:** | Yes. |

N.T. 9/27/2012 at 50-51.

Thereafter, this court conducted an on-the-record colloquy:

| | |
|---|---|
| **The Court:** | Is this your decision made of your own free will? |
| **Defendant:** | Yes, Your Honor. |
| **The Court:** | Anyone threaten you or promise you or force you anything to get you to make this decision? |
| **Defendant:** | No, Your Honor. |
| **The Court:** | It's your decision? |
| **Defendant:** | Yes, Your Honor. |
| **The Court:** | Did you discuss this with your attorney? |
| **Defendant:** | Yes, sir. |
| **The Court:** | Are you satisfied with her services? |
| **Defendant:** | Yes, your honor. |
| **The Court:** | Now, in addition – You have a right to subpoena and/or call witnesses. Are there any other witnesses you wish to call? This is something that you've discussed with your attorney previously and she's told me no, and I want you to tell me during this colloquy whether there are any other witnesses you wish to call? |
| **Defendant:** | No, Your Honor. |

N.T. 9/27/2012 at 53-54.

This court and defense counsel continued:

8

| | |
|---|---|
| **The Court:** | Ms. Coyne, before we bring the jury out, you wanted to supplement the record? |
| **Counsel:** | Yes, Your Honor. With respect to the witness – Steven Berry, – I discussed the reasons for and against having Mr. Berry testify or recalling him as a witness for my client. We agreed that we would not call Mr. Berry. I made a strategic decision that it would not be wise to call Mr. Berry. |
| **The Court:** | And that's the – witness you've spoken about? |
| **Counsel:** | That's the unavailable witness. |
| **The Court:** | He's already testified. |
| **Counsel:** | Yes, he has testified previously. Mr. Berry was here today, and after conferring with my client this morning – I was asked by the sheriffs sometime around noontime or one o'clock, a little while ago, if they could return Mr. Berry, and I had made a strategic decision at that point not to call him. |

N.T. 9/27/2012 at 156-157.

Hence, petitioner's assertion that trial counsel's failure to call a witness resulted in ineffective assistance is meritless. Petitioner had the opportunity to call Steven Berry as a witness, but for strategic reasons chose not to call him.

Next, petitioner contends that the sentence imposed on the robbery charge was illegal. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *See Commonwealth v. McNabb*, 819 A.2d 54 (Pa. Super. 2003). A sentence must either exceed the statutory limit or be manifestly excessive to constitute an abuse of discretion. *Commonwealth v. White*, 491 A.2d 252 (Pa. Super. 1985). A jury convicted petitioner of second degree murder, robbery and criminal conspiracy. For each offense this court imposed a sentence within the range permitted by statute. 18 Pa. C.S. § 1102(c). An individual convicted of robbery, where he intentionally caused serious bodily injury

or death has committed a first-degree felony. *See* 18 Pa. C.S. § 3701 (a)(1)(ii), (b). A first-degree felony carries a maximum imprisonment sentence of twenty years. Although this court sentenced petitioner to a term of ten to twenty years of state incarceration on the robbery charge, in violation of the prohibition against imposition of a sentence on the predicate offense in a second-degree murder case, said sentence was ordered to run concurrently with the second-degree murder charge. N.T. 10/1/2012 at 18. Thus, the sentence on the robbery bill can be vacated by this court without prejudice to petitioner.

Next, petitioner alleges that trial counsel was ineffective for failing to present "Other Suspect Defense." This claim is meritless. Petitioner provided the police with an inculpatory statement admitting his involvement in the robbery and murder and told the detectives that he was promised $32,000 if he served as the gunman in the robbery of the victim. N.T. 9/26/12 at 57-59. Moreover, video surveillance footage showed petitioner walking toward the car in which the victim was a passenger just before the vehicle brake lights were activated, shots were fired, and the vehicle sped away. N.T. 9/26/12 at 21-23. Immediately following the shooting, the video footage also showed petitioner running to a large SUV belonging to his co-conspirator. N.T. 9/26/12 at 23. Consequently, petitioner cannot establish the prejudice prong required for ineffective assistance of counsel. The Court in *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995) held that if petitioner has failed to meet the prejudice prong, this court could dispose of the claim on that basis alone, without determining whether the first two prongs have been met.

In his fourth claim, petitioner alleges a *Brady* violation occurred when the Commonwealth failed to present its key witness, Steven Berry. In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999). "Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001). Here, petitioner cannot meet his burden under *Brady*. Further, the Commonwealth did call Steven Berry to testify. N.T. 9/27/2012 at 156-157. Thus, no relief can be granted on this claim.

Next, petitioner contends that a *Brady* violation occurred because trial counsel failed to cross-examine the medical examiner on an inconsistent statement, and evidence that another individual committed the murder was suppressed. These assertions are meritless. The trial record shows that the medical examiner was cross-examined on inconsistent statements made in his report. N.T. 9/27/2012 at 25-30. Moreover, petitioner contends that the Commonwealth possessed documents indicating that another individual was responsible for the murder yet fails to identify those documents. The evidence mounted against petitioner was overwhelming: he gave the authorities an inculpatory statement, and he was observed on video surveillance approaching and firing at a vehicle in which the victim was a passenger. N.T. 9/26/2012 at 57-59; N.T. 9/26/2012 at 21-23. No relief can be granted on this claim.

Lastly, petitioner alleges that the trial court abused its discretion by not entertaining his motion to suppress his alleged coerced confession. This claim is meritless. Discretion is "abused when the course pursued represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action

is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Company, Inc.*, 625 A.2d 1181 (Pa. Super. 1993). Here, a suppression hearing was held before the Honorable Shelley Robins New who found, *inter alia*, that petitioner's testimony was inconsistent and unworthy of belief. N. T. 3/22/2012 at 132. Judge Shelley Robins New also found that petitioner's confession was made knowingly, voluntarily and intelligently, and she denied his motion to suppress the confession. *Id.* at 132-133. Thus, no relief can be granted on this meritless claim.

Accordingly, for the foregoing reasons, the dismissal of petitioner's PCRA petition should be AFFIRMED.

BY THE COURT:

SANDY L.V. BYRD     J.